1  STEVEN A. MARENBERG (SB# 101033)
   stevenmarenberg@paulhastings.com
2  SUSAN K. LEADER (SB# 216743)
   susanleader@paulhastings.com
3  ALI R. RABBANI (SB# 253730)
   alirabbani@paulhastings.com
4  KIAURA CLARK (SB# 336314)
   kiauraclark@paulhastings.com
5  **PAUL HASTINGS LLP**
   1999 Avenue of the Stars, 27th Floor
6  Los Angeles, California 90067
   Telephone:  (310) 620-5700
7  Facsimile:  (310) 620-5899

8  Attorneys for Defendants

9

10

11

12

13

14

15                    UNITED STATES DISTRICT COURT

16                   CENTRAL DISTRICT OF CALIFORNIA

17

18  KRISTA PERRY, an individual;          CASE NO. 2:23-cv-05551-MCS-JPR
    LARISSA MARTINEZ, an individual;
19  and JAY BARON, an individual,         **DEFENDANTS' MEMORANDUM
                                          OF POINTS AND AUTHORITIES
20              Plaintiffs,               IN SUPPORT OF MOTION TO
                                          DISMISS PLAINTIFFS' THIRD
21        v.                              AND SIXTH CLAIMS FOR
                                          RELIEF AND MOTION TO
22  SHEIN DISTRIBUTION                    STRIKE PORTIONS OF THE
    CORPORATION, a Delaware               COMPLAINT**
23  corporation; ROADGET BUSINESS
    PTE. LTD; ZOETOP BUSINESS             Date:     November 20, 2023
24  COMPANY, LIMITED; and DOES 1-         Time:     9:00 a.m.
    10 inclusive.                         Place:    Courtroom 7C
25                                        Judge:    Hon. Mark C. Scarsi
                Defendants.
26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   RELEVANT FACTUAL ALLEGATIONS ..................................................... 4

    A.    The Parties:  Plaintiffs and the Shein Defendants .................................. 4

    B.    Plaintiffs' RICO Allegations .................................................................. 5

III.  LEGAL STANDARD ..................................................................................... 6

IV.  PLAINTIFFS' RICO CLAIM SHOULD BE DISMISSED FOR
     FAILURE TO STATE A CLAIM ................................................................... 6

    A.    Plaintiffs' Garden Variety Copyright Infringement Claims Cannot Serve as
        Predicate Acts Under RICO. ................................................................... 7

        1.    The Legislative History of the Anticounterfeiting Act and § 2319
            Reveal That Congress Intended to Criminalize Counterfeiting and
            Piracy. ........................................................................................... 7

        2.    This District's Precedent Holds that Garden Variety Infringement
            Claims Cannot Serve as RICO Predicate Acts. ............................... 9

    B.    Plaintiffs Also Fail to Plausibly Allege "Willful" Copyright Infringement. ......... 12

    C.    Plaintiffs Cannot Allege the Requisite Proximate Causation Under RICO. .......... 13

    D.    Plaintiffs Fail to Adequately Allege That Each Defendant Participated in
        the Conduct of a RICO Enterprise. ......................................................... 15

V.   PLAINTIFF BARON'S COPYRIGHT INFRINGEMENT CLAIM
    MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.................. 16

VI.  INDEPENDENTLY, THE COURT SHOULD STRIKE PLAINTIFFS'
    IMMATERIAL, IMPERTINENT, AND SCANDALOUS
    ALLEGATIONS UNDER FEDERAL RULE 12(F) ....................................... 19

VII. CONCLUSION .............................................................................................. 21

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS AND STRIKE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliotti v. R. Dakin & Co.*,
    831 F.2d 898 (9th Cir. 1987) ............................................................... 18

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ................................................................... 13, 14

*Apps v. Universal Music Grp., Inc.*,
    283 F. Supp. 3d 946 (D. Nev. 2017), *aff'd*, 763 F. App'x 599 (9th
    Cir. 2019) ........................................................................ 17, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................ 6

*Boyman v. Disney Enters., Inc.*,
    No. CV 17-8827-DMG (JEM), 2018 WL 5094902 (C.D. Cal. June
    1, 2018) ........................................................................ 9

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001) ........................................................................ 16

*Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*,
    No. 17-cv-1054-BAS-JMA, 2018 WL 828099 (S.D. Cal. Feb. 12,
    2018) ........................................................................ 20

*Club One Casino, Inc. v. Sarantos*,
    No. 1:17-cv-00818-DAD-SAB, 2018 WL 4719112 (E.D. Cal. Sept.
    28, 2018), *aff'd sub nom. Club One Casino, Inc. v. Perry*, 837 F.
    App'x 459 (9th Cir. 2020) ............................................................... 14

*Dowling v. United States*,
    473 U.S. 207 (1985) ........................................................................ 9

*Ets–Hokin v. Skyy Spirits, Inc.*,
    225 F.3d 1068 (9th Cir. 2000) ............................................................. 18

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS AND STRIKE

*George S. Chen Corp. v. Cadona Int'l, Inc.*,
266 F. App'x 523 (9th Cir. 2008) ...................................................................... 18

*Gomez v. Guthy-Renker, LLC*,
No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042, at *8-11
(C.D. Cal. July 13, 2015) ................................................................................... 15

*Haddock v. Countrywide Bank, NA*,
No. CV-14-6452 PSG, 2015 WL 9257316 (C.D. Cal. Oct. 27,
2015) ................................................................................................................... 21

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*,
23 F. Supp. 3d 173 (S.D.N.Y. 2014) ................................................................. 11

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010) ........................................................................................ 2, 13

*Holmes v. Sec. Investor Prot. Corp.*,
503 U.S. 258 (1992) ........................................................................................... 13

*Hunter v. Tarantino*,
No. CV 10-03387 SJO, 2010 WL 11579019 (C.D. Cal. July 15,
2010) ..................................................................................................................... 9

*Islas v. Ford Motor Co.*,
No. EDCV 18-2221-GW(SPx), 2021 WL 6104187 (C.D. Cal. Sept.
14, 2021) ............................................................................................................. 10

*In re Jamster Mktg. Litig.*,
No. 05cv0819 JM(CAB), 2009 WL 1456632, at *5 (S.D. Cal. May
22, 2009) ............................................................................................................. 15

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................... 15

*L.A. Turf Club, Inc. v. Horse Racing Labs, LLC*,
No. CV 15-09332 SJO, 2016 WL 6823493 (C.D. Cal. May 2, 2016) ............... 14

*Leadership Stud., Inc. v. ReadyToManage, Inc.*,
2:15-cv-09459-CAS(AJWx), 2017 WL 2408118 (C.D. Cal. June 2,
2017) ................................................................................................................... 17

*Mattel, Inc. v. MGA Ent., Inc.*,
782 F. Supp. 2d 911 (C.D. Cal. 2011) ............................................................... 12

- iii -

*Mazzeo v. Gibbons*,
   649 F. Supp. 2d 1182 (D. Nev. 2009) ............................................................. 21

*McZeal v. Amazon Servs., LLC*,
   No. 2:21-cv-07093-SVW-RAO, 2021 WL 5213099 (C.D. Cal. Nov.
   8, 2021), *aff'd sub nom. McZeal v. Amazon.com Servs., LLC*, 2023
   WL 3563009 (9th Cir. May 19, 2023)................................................................ 10

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ............................................................................ 6

*MHF Zweite Acad. Film GmbH & Co. KG v. Warner Bros Ent. Inc.*,
   No. CV 12–2381–JFW, 2012 WL 13012677 (C.D. Cal. Aug. 13,
   2012) ..................................................................................................................... 9

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
   No. CV 12-02943 MMM, 2013 WL 12129642 (C.D. Cal. July 31,
   2013) ............................................................................................................... 19, 20

*Neerman v. Cates*,
   No. CV 22-2751 PA, 2022 WL 18278377 (C.D. Cal. Dec 28, 2022) ........... 3, 15

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) .......................................................................................... 16

*Robert Kubicek Architects & Assocs. Inc. v. Bosley*,
   No. CV 11–2112 PHX DGC, 2012 WL 3149348 (D. Ariz. Aug. 1,
   2012) ..................................................................................................................... 10

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003)............................................................. 3, 17, 18, 19

*Shame on You Prods., Inc. v. Banks*,
   120 F. Supp. 3d 1123 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519
   (9th Cir. 2017) ................................................................................................. 3, 18

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016)............................................................. 15

*Steward v. West*,
   No. CV 13-02449-BRO, 2013 WL 12120232 (C.D. Cal. Sept. 6,
   2013) ..................................................................................................................... 9

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS AND STRIKE

*Stewart v. Wachowski,*
    No. CV 03-2873 MMM, 2005 WL 6184235 (C.D. Cal. June 14,
    2005) ......................................................................................... 1, 7, 8, 9

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) .................................................................. 6

*Sybersound Records, Inc. v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2008) ....................................................... 13, 14

*United States v. Chalupnik,*
    514 F.3d 748 (8th Cir. 2008) ................................................................ 10

*United States v. Larracuente,*
    952 F.2d 672 (2d Cir. 1992) ........................................................... 10, 11

*United States v. Liu,*
    731 F.3d 982 (9th Cir. 2013) ................................................................ 12

*United States v. Ndhlovu,*
    510 F. App'x. 842 (11th Cir. 2013) (per curiam) ................................. 10

**Statutes**

17 U.S.C. § 506(a)(1)(A) .............................................................................. 12

Pub. L. No. 104-153, § 3, 110 Stat. 1386 (1966) ......................................... 8

**Other Authorities**

37 C.F.R. § 202.1 ......................................................................................... 18

Anticounterfeiting Consumer Protection Act: Hearing on H.R. 2511
    Before The House Comm. on the Judiciary, 104th Cong. (Mar. 12,
    1996) ....................................................................................................... 8

Fed. R. Civ. Proc. 12(f) ................................................................................ 19

H.R. Rep. No. 104-556, 104th Cong., 2d Sess. (1996) .................................. 8

5 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT §
    15.01 ....................................................................................................... 7

5 NIMMER ON COPYRIGHT § 15.05 .............................................................. 11

- v -

Onimi Erekosima & Brian Koosed, *Intellectual Property Crimes*, 41
    AM. CRIM. L. REV. 809, 829 (Spring, 2004)........................................................ 9

## I.   **INTRODUCTION**

This is not a cognizable RICO case.  At its core, this is an action brought by three individual Plaintiffs with mainstream copyright and trademark infringement claims, alleging that Shein Distribution Corporation (together with the other defendants, "Shein" or "Defendants") infringed on four of Plaintiffs' copyrighted designs and one trademark—an art print, a throw blanket, an embroidered patch, and a pair of overalls.  *See* Compl. ¶¶ 66-107.

However, through conjecture, immaterial and inflammatory allegations and conveniently placed buzzwords, Plaintiffs attempt to transmogrify their ordinary copyright and trademark infringement claims into something different: a civil RICO action premised on "criminal copyright infringement."  Plaintiffs' endeavor is misguided and finds no support in civil RICO case law or legislative history.  Indeed, if accepted, Plaintiffs' RICO overreach and strained interpretation of "criminal copyright infringement" would expose nearly every multinational corporation with a global supply chain and a corporate structure designed to facilitate worldwide sales, to RICO liability whenever ordinary copyright or trademark infringement is alleged. The Court should decline to open this floodgate.

Specifically, Plaintiffs' RICO claim (the "Sixth Claim for Relief") should be dismissed on several independent grounds:

***First***, although criminal copyright infringement may, in certain limited instances, serve as the basis for a RICO claim, this District has properly held that garden variety copyright infringement claims, like those alleged by Plaintiffs here, "cannot serve as predicate acts to establish a RICO violation." *Stewart v. Wachowski*, No. CV 03-2873 MMM (VBKx), 2005 WL 6184235, at *6 (C.D. Cal. June 14, 2005). Rather, the legislative history of the Anticounterfeiting Act, which added criminal copyright infringement to the list of RICO predicate acts, makes clear that Congress only intended to extend the scope of RICO to cover large-scale counterfeiting and piracy.  *Id.* at *4-6.  Nothing of the sort is, or can be, alleged here.  Instead, Plaintiffs

allege just four instances of copyright infringement over the course of six years. *See* Compl. ¶¶ 66-100.[1]

*Second*, Plaintiffs do not, and cannot, plausibly allege that Defendants "willfully" infringed their copyrights, as required for a RICO claim premised on predicate acts of criminal copyright infringement. Plaintiffs' allegation (even if it were true) that Shein uses a "secretive," "algorithm-based business model" that independently "spits out [infringing] design[s]" *without any human involvement* does not come close to plausibly alleging the requisite "specific intent" for criminal copyright infringement. *Id.* ¶¶ 5, 32, 35, 117.

*Third*, Plaintiffs also do not, and cannot, adequately allege proximate causation as required by the RICO statute. The Supreme Court has held that proximate causation in RICO cases requires "some direct relation between the injury asserted and the injurious conduct alleged[,]" and "[a] link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (citation omitted). That description aptly describes Plaintiffs' allegations. Plaintiffs themselves acknowledge that the damages they seek in this action—including diversion of trade, lost profits, and diminishment in the value of their designs, rights, and reputation—"are difficult to quantify, and are seen as inherently speculative." Compl. ¶ 25.

*Fourth*, Plaintiffs fail to adequately allege that each of the Defendants conducted or participated in the conduct of a RICO enterprise. Courts have

---

[1] Although the Complaint's allegations must be taken as true here, Shein vigorously disputes the outrageous suggestion that it has "grown rich" through serial infringement. *See* Compl. ¶ 6. Shein's success is, more accurately, attributable to its technological and business acumen, which enabled it to democratize fashion with inclusive sizes and offerings at affordable prices. Even Plaintiffs' own allegations belie their rhetoric—Plaintiffs can only point to 50 lawsuits over multiple years (none of which involve a court or jury finding of infringement) against Shein, which is one of the world's largest fashion and lifestyle retailers, adding over 6,000 products to its catalog on a daily basis.

"overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises." *Neerman v. Cates*, No. CV 22-2751 PA (PVCx), 2022 WL 18278377, at *6 (C.D. Cal. Dec 28, 2022) (citation omitted). Yet, when scrutinized, the Complaint merely alleges that Defendants are part of a global group of affiliated companies with ordinary parent-subsidiary relationships, and that each Defendant engaged in ordinary and routine business conduct. *See, e.g.*, Compl. ¶¶ 15-16, 56, 111. Moreover, the Complaint does nothing to specifically allege that any individual Defendant participated in the "operation or management" of the alleged enterprise. *See, e.g.*, *id.*

Independent of the flaws in Plaintiffs' RICO claim, Plaintiff Jay Baron's claim for copyright infringement (the "Third Claim for Relief") must also be dismissed. Although Plaintiff Baron alleges that Shein infringed upon his "original artwork," *see* Compl. ¶¶ 86-91, his artwork (reproduced in Attachment 1 hereto) is anything but—it is composed of the kind of standard elements and stock phrases that courts have repeatedly found to be unprotected by copyright law. *See, e.g.*, *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003); *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1147-49 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519 (9th Cir. 2017).

Finally, Shein's separate Motion to Strike brought pursuant to Federal Rule 12(f) should be granted. The Complaint is riddled with inflammatory, immaterial and false allegations regarding Shein's purported labor practices, alleged environmental issues and tax strategies. *See* Section VI *infra.* These allegations have no possible bearing on the controversy at issue, which solely relates to alleged copyright and trademark infringement. They are, presumably, only included to cast Defendants in a derogatory light and thus are precisely the type of allegations subject to a motion to strike and ought to be stricken from the Complaint.

## II.   **RELEVANT FACTUAL ALLEGATIONS**

For purposes of this motion, the most pertinent allegations of Plaintiffs' Complaint are as follows:[2]

### A.   The Parties:  Plaintiffs and the Shein Defendants

Plaintiffs are three independent designers who market and/or sell their designs on a small scale online and/or in stores.  Compl. ¶¶ 10-12, 29.

According to the Complaint, Shein is the "world's largest fashion retailer," selling its products on a worldwide basis.  Compl. ¶ 17.  The Complaint alleges that Shein sells "more clothing than any other [brand] in the world," *id.* ¶¶ 1, 17, and that Shein's mobile app is the most downloaded application in the U.S., exceeding even Amazon's, TikTok's and Instagram's.  *Id.* ¶18.  The pleading also alleges that Shein adds "thousands of new products" to its product line every day.  *Id.* ¶ 23.  As an e-commerce-only retailer, Shein uses cutting-edge technologies and a revolutionary business model to identify consumer trends and limit excess inventory.  *Id.* ¶¶ 4-5, 21-24.  Through this business model, Shein is able to gauge customer interest in real-time and provide feedback to its third-party suppliers to increase or stop production based directly on market demand.  *Id.* ¶ 40.  As a result, Shein is able to, and does, add thousands of new items to its online store every day, and over a million new items each year.  *Id.* ¶¶ 5, 23, 23 n.6.  At the same time, Shein only produces 100 to 200 pieces of any product at launch and responds with increased production only if demand warrants it.  *Id.* ¶¶ 35, 40.

Plaintiffs allege that (like all global businesses) Shein has an organizational structure designed to handle its international operations.  *Id.* ¶¶ 44-46.  According to the Complaint, Defendant Shein Distribution Corporation ("SDC") is a "domestic

---

[2] As required by Rule 12, Defendants take these allegations as true for purposes of this motion.  At bottom, however, the Complaint is riddled with allegations that are demonstrably false or presented in a manner that divorces them from the truth.  But that is a matter for another day.

operating company" that handles "administrative functions," such as recruiting lawyers, accountants, and IT workers as well as designing advertising materials and campaigns. *Id.* ¶ 56. Defendant Roadget Business Pte. Ltd. ("Roadget") is the owner of the Shein global trademarks and owns the Shein website and mobile app. *Id.* ¶¶ 15, 56. And, according to the Complaint, Defendant Zoetop Business Company, Limited ("Zoetop") owns and operates Shein's websites and mobile apps.[3] *Id.* ¶¶ 16, 56.

### B.   Plaintiffs' RICO Allegations

According to the Complaint, Defendants allegedly infringed four of Plaintiffs' copyrighted designs and one trademark—an art print ("Make It Fun"), a throw blanket ("Floral Bloom"), an embroidered patch ("Trying My Best"), and a pair of overalls ("Orange Daisies"). *Id.* ¶¶ 66-107. After alleging these non-extraordinary copyright and trademark infringement claims, Plaintiffs devote the bulk of their Complaint to weaving together a baseless and implausible civil RICO claim premised on predicate acts of alleged criminal copyright infringement. *See, e.g.*, *id.* ¶¶ 108-124. Their allegations, however, undermine the claim.

For example, Plaintiffs conclusorily allege that Defendants engage in "large-scale and systematic intellectual property theft." *Id.* ¶ 1. But, the Complaint points to nothing more than the existence of their four copyright infringement claims, two other copyright lawsuits filed by the same plaintiffs' counsel, and "reports" of 50 other suits over the past several years (none of which are alleged to have resulted in an actual judgment of infringement). *See, e.g.*, *id.* ¶¶ 28, 115. Similarly, although Plaintiffs acknowledge the global reach and complexity of Defendants' operations— and spend pages (incorrectly) identifying entities in Defendants' "vertically integrated" corporate structure, *id.* ¶ 45. They claim – with no facts and only empty rhetorical flourishes – that the Company's corporate structure is designed to

---

[3] Zoetop was a private Hong Kong Company; however, Zoetop is no longer in operation. *See* Certification and Notice of Interested Parties, ECF No. 19.

"facilitate[]" purported intellectual property theft (rather than to optimize global operations). *See, e.g.*, *id.* ¶¶ 1, 2 n.2, 6, 112.

Based on these claims, Plaintiffs seek damages in the form of, among other things, diversion of trade, lost profits, and diminishment in value of their art, rights, and reputation. *Id.* ¶¶ 72-73, 83-84, 90-91, 99-100, 107. But, as Plaintiffs themselves acknowledge, "[s]uch damages are difficult to recover in law, because they are difficult to quantify, and are seen as inherently speculative." *Id.* ¶ 25.

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(b)(6), dismissal is required where the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). Whether a complaint contains sufficient factual matter turns on whether the claim stated is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

## IV.  PLAINTIFFS' RICO CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

To state a civil RICO claim, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to [its] business or property. *Swartz v. KPMG LLP,* 476 F.3d 756, 760-61 (9th Cir. 2007). Here, the Complaint fails to adequately allege at least four of these five elements: conduct, enterprise, racketeering activity, and causation.

A.   **Plaintiffs' Garden Variety Copyright Infringement Claims Cannot Serve as Predicate Acts Under RICO.**

Central District precedent holds that garden-variety copyright infringement claims "cannot serve as predicate acts to establish a RICO violation." *Stewart*, 2005 WL 6184235, at \*6; *see also* cases cited *infra* at 9-10.  In her well-reasoned opinion in *Stewart*, Judge Morrow concluded that there was no "Congressional intent to expand RICO liability to all knowing copyright infringement, including acts that cannot be characterized as counterfeiting or piracy[,]" and therefore found that such acts cannot serve as predicate acts to establish a RICO violation.  *Stewart*, 2005 WL 6184235, at \*6.

The leading copyright law treatise, *Nimmer on Copyright*, concurs.  "[E]very run-of-the-mill copyright case . . . serv[ing] as the basis of [a criminal copyright infringement] indictment . . . lies far afield both from Congress' intent, and from any rational ordering of the copyright system."  5 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 15.01(alterations added).

Thus, for criminal copyright infringement to serve as a RICO predicate act, Plaintiffs must allege copyright infringement that rises to the level of *piracy or counterfeiting*.  Plaintiffs have not, and cannot, do so here.  Their attempt to transform ordinary copyright infringement claims into predicate acts of criminal copyright infringement to concoct a civil RICO claim should be rejected.

1.   **The Legislative History of the Anticounterfeiting Act and § 2319 Reveal That Congress Intended to Criminalize Counterfeiting and Piracy.**

Courts have long recognized that the legislative history [4] of the Anticounterfeiting Consumer Protection Act of 1996 ("Anticounterfeiting Act")

---

[4] Courts look to legislative history, even when the plain language of a statute is unambiguous, where "the legislative history clearly indicates that Congress meant

"reveals that Congress's true intent" in adding criminal copyright infringement (18 U.S.C. § 2319) to the list of RICO predicate acts was "simply to increase the available penalties for counterfeiting and piracy," and not to criminalize *all* copyright infringement. *Stewart*, 2005 WL 6184235, at \*4-5 ("[n]owhere in the legislative history of the Anticounterfeiting Act is there any indication that Congress intended to extend RICO liability to organizations that infringed copyrights by means other than counterfeiting or piracy").

Rather, the legislative history makes clear that "Congress did *not* intend to criminalize *all* intentional copyright infringement or subject *all* multiple acts of intentional infringement to RICO liability." *Stewart,* 2005 WL 6184235, at \*5. Congress, for example, clearly stated that the purpose of H.R. 2511, the bill enacted as the Anticounterfeiting Act, was to "prevent counterfeiting of copyrighted and trademarked goods and services and to ensure that counterfeit goods produced elsewhere cannot enter the United States." *See, e.g.*, H.R. Rep. No. 104-556, 104th Cong., 2d Sess. (1996). During a hearing on H.R. 2511, a member of the House of Representatives emphasized that "H.R. 2511 will provide much needed protections against copyright and trademark counterfeiting." *See* Anticounterfeiting Consumer Protection Act: Hearing on H.R. 2511 Before The House Comm. on the Judiciary, 104th Cong. (Mar. 12, 1996). This legislative intent is also consistent with the text of the Anticounterfeiting Act, which added various counterfeiting offenses in addition to criminal copyright infringement as predicate acts of "racketeering." *See* Pub. L. No. 104-153, § 3, 110 Stat. 1386 (1966).

The legislative history of the criminal copyright statute itself, 18 U.S.C § 2319, likewise shows that the Anticounterfeiting Act was directed at counterfeiting and piracy. The Supreme Court has recognized that Congress enacted § 2319 to "strengthen the laws against record, tape, and film piracy" because it "belie[ved] that

something other than what it said." *Stewart*, 2005 WL 6184235, at \*4 (quoting *Cal. Dep't of Soc. Servs. v. Thompson*, 321 F.3d 835, 853 (9th Cir. 2003)).

the existing misdemeanor penalties for copyright infringement were simply inadequate to deter the enormously lucrative activities of large-scale bootleggers and pirates." *Dowling v. United States*, 473 U.S. 207, 224-25 (1985).  And even though § 2319 was later expanded to include other types of copyrighted works, that revision "was intended merely to expand the types of *counterfeiting* activities punishable as felonies and not to work any other substantive change to the section." *Stewart*, 2005 WL 6184235, at *6 (emphasis added); *see also* Onimi Erekosima & Brian Koosed, *Intellectual Property Crimes*, 41 AM. CRIM. L. REV. 809, 829 (Spring, 2004) ("Enacted in October 1992, the Copyright Felony Act responded primarily to the growing problem of large-scale computer software piracy.").

## 2.    This District's Precedent Holds that Garden Variety Infringement Claims Cannot Serve as RICO Predicate Acts.

After *Stewart*, courts in the Central District of California have consistently held that garden-variety copyright infringement claims cannot serve as predicate acts to establish a RICO violation.  *Stewart*, 2005 WL 6184235, at *5-6, *15 (granting motion to dismiss RICO claims premised on allegations of ordinary copyright infringement); *Boyman v. Disney Enters., Inc.*, No. CV 17-8827-DMG (JEM), 2018 WL 5094902, at *5 (C.D. Cal. June 1, 2018) (granting motion to dismiss where "purported copyright infringement" did not "constitute RICO predicate acts as a matter of law"); *Steward v. West*, No. CV 13-02449-BRO (JCx), 2013 WL 12120232, at *6 (C.D. Cal. Sept. 6, 2013) (granting motion to dismiss RICO claim because "the alleged acts of copyright infringement are neither counterfeiting nor piracy"); *MHF Zweite Acad. Film GmbH & Co. KG v. Warner Bros Ent. Inc.*, No. CV 12-2381-JFW (JCx), 2012 WL 13012677, at *2-3 (C.D. Cal. Aug. 13, 2012) (denying motion for leave to amend complaint to add RICO claim premised on ordinary copyright infringement); *Hunter v. Tarantino*, No. CV 10-03387 SJO (PJWx), 2010 WL 11579019, at *10 (C.D. Cal. July 15, 2010) (granting motion to dismiss because "copyright infringement beyond piracy or counterfeiting . . . cannot serve as the

predicate offense for Plaintiffs' RICO claim"); *see also McZeal v. Amazon Servs., LLC*, No. 2:21-cv-07093-SVW-RAO, 2021 WL 5213099, at *5 (C.D. Cal. Nov. 8, 2021) (granting motion to dismiss because "ordinary trademark infringement claims cannot be contorted into a RICO violation"), *aff'd sub nom. McZeal v. Amazon.com Servs., LLC*, 2023 WL 3563009 (9th Cir. May 19, 2023).  Courts outside the Central District of California (but still within the Ninth Circuit) have likewise dismissed RICO claims predicated on copyright infringement absent allegations of counterfeiting or piracy.  *See, e.g.*, *Robert Kubicek Architects & Assocs. Inc. v. Bosley*, No. CV 11–2112 PHX DGC, 2012 WL 3149348, at *2 (D. Ariz. Aug. 1, 2012).[5]

These precedents mandate dismissal here.  Plaintiffs' Complaint merely alleges garden-variety infringement claims.  Plaintiffs do not plausibly allege that Defendants engaged in the type of large-scale organized counterfeiting or piracy that the Anticounterfeiting Act and 18 U.S.C. § 2319 are intended to address.  Nor can they—courts have found such large-scale counterfeiting or piracy only where the allegations implicate an exceptionally high volume of allegedly infringing items that typically have a relatively high aggregate retail value.  *See, e.g.*, *United States v. Larracuente*, 952 F.2d 672, 673 (2d Cir. 1992) (defendant bootlegged thousands of copyrighted films via use of a "counterfeiting laboratory"); *United States v. Ndhlovu*, 510 F. App'x. 842, 846 (11th Cir. 2013) (per curiam) (defendant committed "high-volume counterfeit manufacturing" of over 6,500 infringing CDs and DVDs); *United States v. Chalupnik*, 514 F.3d 748, 750–51 (8th Cir. 2008) (defendant engaged in counterfeiting scheme involving nearly 4,000 infringing CDs and DVDs).  In *Larracuente*, for example, the defendant sold over 2,500 counterfeit movies, whose

---

[5] If Plaintiffs point to diverging opinions from the Northern District of California, and courts outside the Ninth Circuit, none of these precedents is binding on this Court. Because the *Stewart* decision and its progeny are better-reasoned, this Court should follow the majority approach in the Central District "to avoid . . . an intra-District split[.]" *See, e.g.*, *Islas v. Ford Motor Co.*, No. EDCV 18-2221-GW(SPx), 2021 WL 6104187, at *2 (C.D. Cal. Sept. 14, 2021) ("if for no other reason than to avoid deepening an intra-District split, the Court will follow the majority approach to this question's outcome").

aggregate value exceeded $190,000.  952 F.2d at 673-74.  Similarly, *Chalupnik* and *Ndhlovu* involved counterfeiting schemes involving thousands of infringements, each with aggregate retail values of over $100,000.  Allegations of small-scale infringements are simply insufficient to constitute criminal copyright infringement. *See Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 23 F. Supp. 3d 173, 192 (S.D.N.Y. 2014) (finding that "over 100 pieces of allegedly infringing jewelry . . . does not constitute large-scale organiz[ed] counterfeiting schemes cognizable under § 2319"); *see also* Nimmer et al, *supra*, 5 NIMMER ON COPYRIGHT § 15.05 ("Only the most egregious instances of criminal copyright infringement have ever been upheld as predicate offenses to racketeering charges under RICO.").

Here, Plaintiffs allege nowhere near the "large-scale" piracy meant to be addressed by § 2319.  Indeed, the Complaint alleges the opposite.  Plaintiffs allege that Shein sold a modest number of infringing products with a very modest aggregate retail value.  *See* Compl. ¶¶ 67-70, 78-80, 86-87, 93-96, 103-04.  As Plaintiffs acknowledge, Shein "produces very small quantities of [each] item for sale," with the "initial production run . . . as low as 100-200 units per SKU, compared to the thousands of pieces typically produced by traditional peer retailers." *Id.* ¶ 35.  The Complaint also shows that the "Make it Fun" print sold for just $3 on the Shein website.  *Id.* ¶ 69.  Although the rest of the screen captures in the Complaint are pixelated and/or do not include price, *see id.* ¶¶ 80, 87, 96, it is reasonable to infer that the other items at issue were sold at similarly modest prices.  *See also id.* ¶ 5 (alleging that Shein items are offered for sale at prices "low enough to render the garments truly disposable").  Thus, even accepting Plaintiffs' allegations as true, the "very small quantities of [each] item [available] for sale," combined with the low price point of Shein's allegedly infringing products, simply does not bring Shein's alleged infringement in line with that contemplated by § 2319.

Accordingly, the Court should dismiss Plaintiffs' RICO claim because the alleged acts of ordinary copyright infringement cannot serve as predicate acts to establish a RICO violation.

**B.      Plaintiffs Also Fail to Plausibly Allege "Willful" Copyright Infringement.**

To establish a predicate act of criminal copyright infringement, Plaintiffs also must plausibly allege that Defendants "willfully" infringed Plaintiffs' copyrights. *See* 17 U.S.C. § 506(a)(1)(A) (imposing criminal liability on "[a]ny person who willfully infringes a copyright" and "for purposes of commercial advantage or private financial gain[]"); *see also Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 1042 (C.D. Cal. 2011) (applying this standard to a civil RICO claim alleging predicate acts of criminal copyright infringement). The "willfulness" element requires a "voluntary, intentional violation of a known legal duty." *United States v. Liu*, 731 F.3d 982, 990 (9th Cir. 2013) (citation omitted), (a defendant must act with "specific intent" to violate someone's copyright). *Id.* at 989-90.

Again, the allegations of Plaintiffs' Complaint fail to satisfy this high bar. Here, the Complaint alleges that Defendants' purported copyright infringement was the result of a computer "algorithm" that independently "spits out a design," not a specific intent (or even knowledge) by Defendants to copy Plaintiffs' designs. *See, e.g.*, Compl. ¶ 35; *see also id.* ¶ 32 (questioning whether "humans are even involved"). Moreover, although Plaintiffs make the conclusory allegation that Defendants engage in "a systematic and continuous" pattern of criminal copyright infringement, *id.* ¶ 17, the Complaint acknowledges that only a tiny fraction of Shein's designs have ever been subject to allegations of infringement. *Id.* ¶¶ 28, 115. For example, Plaintiffs point to approximately 50 copyright infringement cases over two years against the company, which is *de minimis* compared to the approximately 6,000 new styles the Complaint alleges that Shein adds to its website *every day*. *Id.* ¶¶ 23 n.6, 28, 33.

These allegations fall far short of plausibly alleging the requisite specific intent to commit willful copyright infringement.

Accordingly, the Court should dismiss Plaintiffs' RICO claim on the independent ground that it fails to sufficiently allege predicate acts of criminal copyright infringement.

**C.   Plaintiffs Cannot Allege the Requisite Proximate Causation Under RICO.**

To have standing under civil RICO, Plaintiffs must show that the alleged RICO violation proximately caused their injuries. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Proximate causation under RICO requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp.*, 559 U.S. at 9 (citation omitted). A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Id.* Plaintiffs' proximate cause allegations in the Complaint fall far short of that required by RICO.

The Ninth Circuit's decision in *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) is instructive. In *Sybersound*, the Ninth Circuit affirmed dismissal of a civil RICO claim premised on criminal copyright infringement. *Id.* at 1148. In reaching its decision, the court noted that the Ninth Circuit has formulated three non-exhaustive factors to determine whether the RICO proximate causation requirement has been met, including "whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct[.]" *Id.* at 1147-48. The court also relied on the Supreme Court's decision in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006), which found the absence of proximate causation where, among other things, the defendant's "lost sales could have resulted from factors other than petitioner's alleged acts of fraud" given that "[b]usinesses lose and gain customers for many reasons . . . ." *Sybersound*, 517 F.3d at 1148 (quoting *Anza*, 547 U.S. at 459). Quoting *Anza*, the court noted that "[t]he

- 13 -

element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation." *Id.* at 460.

Based on this precedent, the Ninth Circuit held that the plaintiff could not "overcome the proximate causation hurdle to assert a RICO violation" because the court would have to engage in "a speculative and complicated analysis" to determine what percentage of the plaintiff's decreased sales, if any, were attributable to the defendants' alleged RICO violation. *Sybersound*, 517 F.3d at 1148-49; *see also L.A. Turf Club, Inc. v. Horse Racing Labs, LLC*, No. CV 15-09332 SJO (JEMx), 2016 WL 6823493, at *4 (C.D. Cal. May 2, 2016) (dismissing civil RICO claim where the plaintiffs "fail[ed] to account for the other reasons why customers may place wagers somewhere other than at a race track[]"); *Club One Casino, Inc. v. Sarantos*, No. 1:17-cv-00818-DAD-SAB*, 2018 WL 4719112, at *5 (E.D. Cal. Sept. 28, 2018) (finding that "numerous other factors, aside from defendants' alleged actions, could have led to plaintiffs' decline in business, such as the demand for table games in Fresno, a change in the local economy, or the manner in which plaintiffs operated their business"), *aff'd sub nom. Club One Casino, Inc. v. Perry*, 837 F. App'x 459 (9th Cir. 2020).

*Sybersound* and these other precedents dictate the result in this instance.  Here, Plaintiffs allege damages in the form of "diversion of trade, loss of profits, and a diminishment in the value of [their] designs and art, [their] rights, and [their] reputation."  Compl. ¶¶ 72, 83, 90, 99.  But numerous other factors, aside from Defendants' alleged conduct, could have led to Plaintiffs' lost profits and any decline in business and reputation, including consumer preferences, economic changes, or the manner in which Plaintiffs operated their businesses (or the fact that, as alleged, Plaintiffs operated small businesses).  As in *Sybersound*, the Court would have to engage in "a speculative and complicated" analysis to determine what damages, if any, are attributable to Defendants' alleged copyright infringement.  Plaintiffs themselves acknowledge that "[s]uch damages are difficult to recover in law, because

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS AND STRIKE

they are difficult to quantify, and are seen as inherently speculative." *Id.* ¶ 25. Accordingly, the Court should dismiss Plaintiffs' RICO claim for failure to adequately allege proximate causation.

### D.   Plaintiffs Fail to Adequately Allege That Each Defendant Participated in the Conduct of a RICO Enterprise.

Finally, Plaintiffs fail to sufficiently allege that each Defendant participated in the "conduct" of a RICO "enterprise."

First, although the term "enterprise" is broadly defined to include "any . . . legal entity" or "group of individuals associated in fact," courts have frequently and "overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises." *Neerman v. Cates*, No. CV 22-2751 PA (PVCx), 2022 WL 18278377, at *6 (C.D. Cal. Dec 28, 2022) (citation omitted).[6]

The Complaint in this case is no different. When stripped of its hyperbole and conclusory allegations, the Complaint merely alleges that each of the Defendants engaged in ordinary and routine business conduct as part of a global group of affiliated companies. For example, Plaintiffs allege that SDC is a "domestic operating company" that has a "vertically integrated structure," and manages

---

[6] *See also In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 599 (N.D. Cal. 2020) ("[W]here the individual constituents of an asserted enterprise are alleged only to have conducted the 'regular' business of the corporate entity or business in their own interests, those allegations are insufficient to support a RICO enterprise[]"); *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016) ("entities engaged in 'ordinary business conduct and an ordinary business purpose' do not necessarily constitute an 'enterprise' bound by common purpose under RICO[]") (citation omitted); *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042, at *8-11 (C.D. Cal. July 13, 2015) (granting motion to dismiss RICO claim where plaintiffs attempted to characterize routine commercial relationships as a RICO enterprise); *In re Jamster Mktg. Litig.*, No. 05cv0819 JM(CAB), 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (granting motion to dismiss RICO claim where the plaintiffs alleged that the defendants engaged in "ordinary business conduct," as opposed to a common purpose to engage in a course of illegal conduct).

"administrative functions," such as hiring "lawyers, accountants, and related Information Technology workers" and creating "advertising materials and campaigns." Compl. ¶ 56. Plaintiffs also allege that Roadget owns the "Shein trademarks" as well as the U.S. website and mobile application. *Id*. ¶¶ 15, 56. Moreover, Plaintiffs allege that Zoetop "owns and operates [Shein's] web sites and mobile apps" and "until recently owned the [Shein] trademarks." *Id*. ¶¶ 16, 56. None of these routine business actions are wrongful or establish the existence of a RICO enterprise.[7]

Plaintiffs have also failed to sufficiently allege that each of the Defendants "participate[d] in the operation or management of the enterprise itself." *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). This requires a "showing that the defendants conducted or participated in the conduct of the *enterprise's affairs*, not just their *own* affairs." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (internal quotation marks omitted) (citation omitted). Aside from conclusory allegations and impermissible group pleading, the Complaint fails to specifically allege that *any* individual Defendant participated in the "operation or management" of the alleged enterprise. Rather, as discussed above, Plaintiffs merely allege that each Defendant engaged in ordinary business conduct.

## V.   PLAINTIFF BARON'S COPYRIGHT INFRINGEMENT CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

To establish a prima facie case of copyright infringement, a plaintiff must show (1) ownership of a valid copyright; and (2) copying of the protected elements of the

---

[7] A few paragraphs after describing Shein as "vertically integrated," Plaintiffs contradictorily allege that Shein is "formally decentralized." Compl. ¶ 59. At bottom, despite pages and pages of prolix allegations, *id.* ¶¶ 43-65, the Complaint ultimately describes nothing more than a complex corporate structure as might be expected of a company doing business on a worldwide basis. *Id.* ¶ 17. That certain litigants may have difficulty identifying proper parties to name as defendants does not remotely establish that the structure qualifies as a RICO "enterprise."

work by the defendant. *See Leadership Stud., Inc. v. ReadyToManage, Inc.*, 2:15-cv-09459-CAS(AJWx), 2017 WL 2408118, at *2 (C.D. Cal. June 2, 2017) (citing *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011)); *Apps v. Universal Music Grp., Inc.*, 283 F. Supp. 3d 946, 951–52 (D. Nev. 2017), *aff'd*, 763 F. App'x 599 (9th Cir. 2019).   To prove the second element, a plaintiff must show that the protected material is "original" and that there is "substantial similarity of the general ideas and expression between the copyrighted work and the defendant[s'] work." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003); *Apps*, 283 F. Supp. 3d at 951-52.  Plaintiff Baron's copyright infringement claim (the Third Claim for Relief) fails to meet this standard.

As an initial matter, Plaintiff Baron himself concedes that the Copyright Office refused his copyright registration.   Compl. ¶ 86.   Given that Baron allegedly "complied with 17 U.S.C. § 411 in that the deposit, application, and fee required for registration [were] delivered to the Copyright Office in proper form," *id.*, it is reasonable to infer that the Copyright Office rejected his application for lack of creativity and/or noncompliance with copyright law.  Indeed, "[t]he Copyright Office is required to refuse to register claims to copyright that do not satisfy the copyright law or other legal or procedural requirements."  United States Copyright Office, 2017 Annual       Report       at       4,       available       at https://www.copyright.gov/reports/annual/2017/ar2017.pdf.    Although the vast majority of applications are granted by the Copyright Office, the Office refuses a small number of applications for lack of creativity or noncompliance with other requirements.  *See* United States Copyright Office, 2020 Annual Report at 18, available at https://www.copyright.gov/reports/annual/2022/ar2022.pdf.[8]    It is

---

[8] "Of the hundreds of thousands of applications containing millions of works submitted each year, the Office refuses only a small number for lack of creativity or noncompliance with other requirements.   In FY 2022, the Office refused approximately 3.4 percent of the 486,428 claims received." *Id.*

therefore telling that Plaintiff Baron's application was one of those few that was rejected.

Moreover, Plaintiff Baron does not allege the copying of *original* elements. A plaintiff's work is not original if the work expresses "standard, stock, or common" elements that are "not protectable under copyright law." *Satava*, 323 F.3d at 810.[9] Here, Baron's design is merely a generic nametag with the phrase "Trying My Best" included. Compl. ¶ 87; *see also* Attachment 1. This design is "so commonplace . . . that to recognize copyright protection . . . effectively would give [Baron] a monopoly" on the nametag design. *Satava*, 323 F.3d at 812. In fact, a Google Image search for "Hello I'm trying my best designs" results in pages of nametags nearly identical to Baron's "original" artwork.[10] This commonplace nametag design is not protectable under copyright law.

Similarly, "[s]hort, stock phrases" are not copyright protectable. *See Shame on You*, 120 F. Supp. 3d at 1147-49 (internal citation omitted); 37 C.F.R. § 202.1; *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1081 (9th Cir. 2000) ("Brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed"). For instance, in *Apps*, the court

---

[9] From this principle, courts have held that no copyright protection may be afforded to "commonplace" and "typical" ideas such as "producing a glass-in-glass jellyfish sculpture or to elements of expression that naturally follow from the idea of such a sculpture," *id.* at 810-11; producing stuffed dinosaur toys, *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987); or producing ornaments where the defendant failed to identify elements that were not "commonplace or dictated by the idea of . . . a stereotypical frog[.]" *George S. Chen Corp. v. Cadona Int'l, Inc.*, 266 F. App'x 523, 524 (9th Cir. 2008).

[10] *See* https://www.google.com/search?q=hello+i%27m+trying+my+best+designs&tbm=isch&ved=2ahUKEwjJmPTvmu2BAxUnNEQIHWZbA1EQ2-cCegQIABAA&oq=hello+i%27m+trying+my+best+designs&gs_lcp=CgNpbWcQA1CeA1ieA2DDBWgAcAB4AIABR4gBhQGSAQEymAEAoAEBqgELZ3dzLXdpbmplbWfAAQE&sclient=img&ei=jCsmZcmiEKfokPIP5raNiAU&bih=507&biw=1043.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS AND STRIKE

held that the plaintiff had no copyright protection for the phrase "I need to know now" in the chorus of her song, as this phrase "is not Apps's original phrase." 283 F. Supp. 3d at 952. Here, as in *Apps*, Baron's copyright infringement claim must fail. Neither phrase in Baron's artwork—"Hello, I'm" or "Trying My Best"—is Baron's original phrase, so he has no copyright protection for either.

Because Baron's artwork "combine[s] several unprotectable ideas and standard elements," he may not utilize copyright law to seize these elements for his exclusive use. *Satava*, 323 F.3d at 811. Baron's Third Claim for Relief must therefore be dismissed.

## VI. INDEPENDENTLY, THE COURT SHOULD STRIKE PLAINTIFFS' IMMATERIAL, IMPERTINENT, AND SCANDALOUS ALLEGATIONS UNDER FEDERAL RULE 12(F)

The Court should also strike the immaterial, impertinent, and scandalous allegations that have no basis in truth and no bearing on Plaintiffs' claims. *See* Fed. R. Civ. Proc. 12(f). The essential function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Mireskandari v. Daily Mail & Gen. Tr. PLC*, No. CV 12-02943 MMM (FFMx), 2013 WL 12129642, at *1 (C.D. Cal. July 31, 2013) (citation omitted). Pleadings are "immaterial" when they have "no essential or important relationship to the claim for relief or the defenses being pleaded." *Id.* at *2 (citation omitted). Pleadings are "impertinent" when they "do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). And pleadings are "scandalous" when they improperly cast a "cruelly derogatory light on a party or person." *Id.* at *4 (citation omitted).

Here, the Complaint is riddled with inflammatory hearsay allegations regarding Shein's purported labor practices, environmental issues, or tax planning that have no relevance to the copyright and trademark infringement claims at the heart of this case and portend Plaintiffs' intention to engage in intrusive and

- 19 -

burdensome discovery requiring Shein to refute the baseless and irrelevant allegations.  In particular, Defendants move to strike the following allegations from the Complaint:

- Compl. ¶ 1 at page 1, lines 7-10 (alleging that Shein is a "societal threat" contributing to "environmental damage, sweatshop (or worse) labor conditions, tax avoidance, child safety");

- *Id.* ¶ 1 at page 1 n.1, lines 15-18 (alleging that the "dangers posed by Shein" include "exploitation of trade loopholes" and "forced labor");

- *Id.* ¶ 2 at page 2, lines 1-4 (alleging that Shein "survives grave reports of slave labor");

- *Id.* ¶ 2 at page 2, lines 11-13, and page 3, line 1 (alleging that Shein sells "Swastikas");

- *Id.* ¶¶ 25-27 (alleging that Shein has been criticized regarding "Forced Labor," "Other labor violations," "Health hazards," "Environmental impact," and "Tax avoidance");

- *Id.* ¶ 30 at page 14, line 11 (alleging that Shein's products are "cut and sewn in a sweatshop");

- *Id.* ¶ 33 at page 16, line 2 (alleging that Shein "employs the sweatshop version of a design process); and

- *Id.* ¶ 39 at page 18, lines 17-18 (alleging that Shein uses "questionable labor practices").

These allegations are impertinent and immaterial because they would not be admissible at trial and have no possible bearing on the controversy at issue, which relates solely to alleged copyright and trademark infringement—not purported labor practices, environmental issues or taxes.  In fact, Plaintiffs themselves acknowledge that this case is only "tangentially" about such matters.  *Id.* ¶ 3; *see also* ¶ 2 n.2 (noting that alleged "intellectual property misappropriation" is the "impetus for this action").  As further evidence of the immateriality of these allegations, Plaintiffs never address them again.  As such, these allegations should be stricken from the Complaint.  *See, e.g.*, *Mireskandari*, 2013 WL 12129642, at *1-2 (granting motion to strike allegations of blackmail where the plaintiff did not allege a cause of action based on this purported conduct).

These allegations are also scandalous because they appear to be included solely to tarnish Defendants and cast them in an unfavorable and prejudicial light.  *See, e.g.*,

- 20 -

*Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*, No. 17-cv-1054-BAS-JMA, 2018 WL 828099, at *4 (S.D. Cal. Feb. 12, 2018) (granting motion to strike where immaterial allegations were "likely intended to 'besmirch' Defendants and cast them in a derogatory light"); *see also Haddock v. Countrywide Bank, NA*, No. CV-14-6452 PSG (FFMx), 2015 WL 9257316, at *15 (C.D. Cal. Oct. 27, 2015) (courts may strike allegations under Rule 12(f) when "allegations [are] purely designed to besmirch"); *Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1202 (D. Nev. 2009) (striking allegations as scandalous where they "appear[ ] calculated to cast Defendants in a derogatory light and [are] full of wholly irrelevant material").

Accordingly, the Court should strike the allegations listed above.

## VII.   **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Third and Sixth Claims for Relief with prejudice and, pursuant to Federal Rule 12(f), strike the Complaint's immaterial, impertinent, and scandalous allegations.

DATED:  October 13, 2023                     PAUL HASTINGS LLP


                                             By:/s/ *Steven A. Marenberg*
                                             Steven A. Marenberg

                                             Attorneys for Defendants

### **L.R. 11-6.1 CERTIFICATION**

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,621 words, which complies with the word limit of L.R. 11-6.1.


                                             PAUL HASTINGS LLP


DATED:  October 13, 2023                     By: /s/ *Steven A. Marenberg*
                                             Steven A. Marenberg