STEVEN A. MARENBERG (SB# 101033)
stevenmarenberg@paulhastings.com
SUSAN K. LEADER (SB# 216743)
susanleader@paulhastings.com
ALI R. RABBANI (SB# 253730)
alirabbani@paulhastings.com
KIAURA CLARK (SB# 336314)
kiauraclark@paulhastings.com
**PAUL HASTINGS LLP**
1999 Avenue of the Stars, 27th Floor
Los Angeles, California 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

*Attorneys for Defendants*
*Shein Distribution Corporation,*
*Roadget Business Pte. Ltd., and*
*Zoetop Business Company, Limited*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA PERRY, an individual; LARISSA MARTINEZ, an individual; JAY BARON, an individual; RACHEL PFEFFER, an individual; DIRT BIKE KIDZ, Inc., a California corporation; ESTELLEJOYLYNN, LLC, a New Jersey limited liability company; JESSICA LOUISE THOMPSON SMITH, an individual; LIV LEE, an individual,<br><br>        Plaintiffs,<br><br>        v.<br><br>SHEIN DISTRIBUTION CORPORATION, a Delaware corporation; SHEIN FASHION GROUP, INC.; ROADGET BUSINESS PTE. LTD.; ZOETOP BUSINESS COMPANY, LIMITED; CHRIS XU; and DOES 1-10 inclusive.<br><br>        Defendants. | CASE NO. 2:23-cv-05551-MCS-JPR<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AND TWELFTH CLAIMS FOR RELIEF AND MOTION TO STRIKE PORTIONS OF THE FIRST AMENDED COMPLAINT**<br><br>Date:     January 22, 2024<br>Time:    9:00 a.m.<br>Place:   Courtroom 7C<br>Judge:  Hon. Mark C. Scarsi<br><br>Complaint filed: July 11, 2023<br><br>FAC filed: November 3, 2023 |

DEFS.' MEM. OF P. & A. ISO MOTION TO DISMISS PLS.' THIRD AND TWELFTH
CLAIMS FOR RELIEF AND MOTION TO STRIKE PORTIONS OF THE FAC

# <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ............................................................................................ 1

II. RELEVANT FACTUAL ALLEGATIONS ...................................................... 3

    A. The Parties: Plaintiffs and Shein.......................................................... 3

    B. Plaintiffs' RICO Allegations................................................................. 4

III. LEGAL STANDARD .................................................................................... 6

IV. PLAINTIFFS' RICO CLAIM SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM .................................................................. 6

    A. Plaintiffs' Garden-Variety Infringement Claims Cannot Serve as
Predicate Acts Under RICO................................................................... 7

    B. Plaintiffs' Allegations of Wire Fraud As a RICO Predicate Act
Are Also Insufficient........................................................................... 10

        1. Plaintiffs' Ordinary Infringement Claims Cannot
Constitute Wire Fraud. ............................................................ 11

        2. The FAC Fails to Identify, With Particularity, Any
Affirmative Misrepresentation Made By Any Defendant........ 12

        3. The FAC Fails to Identify the Role of Each Defendant in
the Alleged Fraudulent Scheme................................................ 14

    C. Plaintiffs Cannot Allege the Requisite Proximate Causation
Under RICO. ........................................................................................ 15

    D. The FAC Fails to Adequately Allege That Each Defendant
Participated in the Conduct of a RICO Enterprise............................. 17

V. PLAINTIFF BARON'S COPYRIGHT INFRINGEMENT CLAIM
MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM .............. 18

VI. THE COURT SHOULD STRIKE PLAINTIFFS' IMMATERIAL,
IMPERTINENT, AND SCANADLOUS ALLEGATIONS UNDER
FEDERAL RULE 12(F)................................................................................ 20

VII. CONCLUSION ........................................................................................... 21

L.R. 11-6.1 CERTIFICATION.............................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ................................................................................. 18

*Apps v. Universal Music Grp., Inc.*,
283 F. Supp. 3d 946 (D. Nev. 2017), *aff'd*, 763 F. App'x 599 (9th
Cir. 2019) ................................................................................. 21, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 6, 7

*Boyman v. Disney Enters., Inc.*,
2018 WL 5094902 (C.D. Cal. June 1, 2018) ................................................. 8

*Bryant v. Mattel, Inc.*,
2010 WL 3705668 (C.D. Cal. Aug. 2, 2010) ............................................... 14

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001) ................................................................................. 20

*Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*,
2018 WL 828099 (S.D. Cal. Feb. 12, 2018) ................................................ 24

*Club One Casino, Inc. v. Sarantos*,
2018 WL 4719112 (E.D. Cal. Sept. 28, 2018), *aff'd*, 837 F. App'x
459 (9th Cir. 2020) ................................................................................. 16, 19

*Drake v. Toyota Motor Corp.*,
2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) ............................................. 17

*Eller v. EquiTrust Life Ins. Co.*,
778 F.3d 1089 (9th Cir. 2015) ................................................................... 15

*Ets–Hokin v. Skyy Spirits, Inc.*,
225 F.3d 1068 (9th Cir. 2000) ................................................................... 22

*Haddock v. Countrywide Bank, NA*,
    2015 WL 9257316 (C.D. Cal. Oct. 27, 2015) ...................................................... 24

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*,
    23 F. Supp. 3d 173 (S.D.N.Y. 2014) .................................................................. 10

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ............................................................................................. 18

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) .......................................................................................... 18

*Hunter v. Tarantino*,
    2010 WL 11579019 (C.D. Cal. July 15, 2010) .................................................... 8

*Leadership Stud., Inc. v. ReadyToManage, Inc.*,
    2017 WL 2408118 (C.D. Cal. June 2, 2017)....................................................... 21

*McZeal v. Amazon Servs., LLC*,
    2021 WL 5213099 (C.D. Cal. Nov. 8, 2021), *aff'd*, 2023 WL
    3563009 (9th Cir. May 19, 2023)...................................................................... 7, 8

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ............................................................................ 6

*MHF Zweite Acad. Film GmbH & Co. KG v. Warner Bros Ent. Inc.*,
    2012 WL 13012677 (C.D. Cal. Aug. 13, 2012) ................................................... 8

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
    2013 WL 12129642 (C.D. Cal. July 31, 2013) .................................................. 23

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ............................................................................ 17

*Neerman v. Cates*,
    2022 WL 18278377 (C.D. Cal. Dec. 28, 2022) ................................................. 20

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ............................................................................ 13

*Patrizzi v. Bourne in Time, Inc.*,
    2012 WL 4833344 (S.D.N.Y. Oct. 11, 2012) .................................................... 13

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) .......................................................................................... 20

DEFS.' MEM. OF P. & A. ISO MOTION TO DISMISS PLS.' THIRD AND TWELFTH
CLAIMS FOR RELIEF AND MOTION TO STRIKE PORTIONS OF THE FAC

*Robert Kubicek Architects & Assocs. Inc. v. Bosley*,
   2012 WL 3149348 (D. Ariz. Aug. 1, 2012) ........................................................ 8

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ................................................... 21, 22, 23

*Shame on You Prods., Inc. v. Banks*,
   120 F. Supp. 3d 1123, *aff'd*, 690 F. App'x 519 (9th Cir. 2017) ........................ 22

*Smith v. Jackson*,
   84 F.3d 1213 (9th Cir.1996), *overruled on other grounds by*
   *Skidmore ex rel. Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d
   1051 (9th Cir. 2020) ..................................................................... 13

*SolarCity Corp. v. Pure Solar Co.*,
   2016 WL 11019989 (C.D. Cal. Dec. 27, 2016) ................................................. 14

*Steward v. West*,
   2013 WL 12120232 (C.D. Cal. Sept. 6, 2013) ................................................. 8

*Stewart v. Wachowski*,
   2005 WL 6184235 (C.D. Cal. June 14, 2005) ............................................ 7, 8, 9

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .......................................................... 7, 12

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ......................................................... 18, 19

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
   Pracs., & Prods. Liab. Litig.*,
   826 F. Supp. 2d 1180 (C.D. Cal. 2011) ................................................ 12, 16

*United States v. Chalupnik*,
   514 F.3d 748 (8th Cir. 2008) ............................................................. 9

*United States v. Larracuente*,
   952 F.2d 672 (2d Cir. 1992) ............................................................. 9

*United States v. Ndhlovu*,
   510 F. App'x. 842 (11th Cir. 2013) ..................................................... 9

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................... 15

- iv -

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2017 WL 4890594 (N.D. Cal. Oct.30, 2017) ................................................ 14, 15

*Wecosign, Inc. v. IFG Holdings, Inc.*,
   845 F. Supp. 2d 1072 (C.D. Cal. 2012) ............................................................ 13

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
   601 F. Supp. 3d 625 (C.D. Cal. 2022), *opinion clarified by* 2022
   WL 19425927 (C.D. Cal. Mar. 2, 2022) ...........................................12, 14, 16, 17

**Statutes**

37 C.F.R. § 202.1 ...................................................................................................... 22

17 U.S.C. § 411 ......................................................................................................... 21

18 U.S.C § 2319 ..................................................................................................... 9, 10

Anticounterfeiting Consumer Protection Act of 1996 ............................................... 8

Copyright Felony Act .................................................................................................. 9

Racketeer Influenced and Corrupt Practices Act ("RICO")............................*passim*

**Other Authorities**

Bouvier Law Dictionary ........................................................................................... 15

Rule
   9(b)...................................................................................................12, 15, 16, 17
   12(b)(6) ....................................................................................................... 2, 6
   12(f) ........................................................................................................3, 23, 24

## I.     **INTRODUCTION**

The First Amended Complaint ("FAC") now before the Court on this Motion to Dismiss ("Motion") is, at its core, an agglomeration of garden-variety copyright and trademark claims by eight unrelated Plaintiffs against Shein Distribution Corporation (together with Roadget Business Pte. Ltd. and Zoetop Business Company, Limited, "Shein" or "Defendants"), who Plaintiffs allege is the world's "largest fashion retailer."   FAC ¶ 24.   Unsatisfied with relying on recognized copyright or trademark law principles, Plaintiffs try to brew their ordinary infringement claims into something larger—a violation of the Racketeer Influenced and Corrupt Practices Act ("RICO").   For the many reasons explained below, the RICO claim is hopelessly flawed, and should be dismissed.

Plaintiffs are egregiously mistaken when they attribute Shein's success to "criminal copyright infringement" and "wire fraud" in their quest to identify a predicate act upon which to premise their RICO claim against Defendants.   Before the FAC goes off the rails with overheated, venomous and inaccurate allegations, Plaintiffs do get one thing right.   They correctly allege that Shein's success is based on its cutting-edge technologies and the application of a "revolutionary business model."   *See* FAC ¶ 4-5.

Shein is, in fact, an innovative global fashion and lifestyle company offering a full range of products that are ever-evolving to meet the diverse needs of its customers.   These products are often offered for sale at affordable prices, thereby bringing fashion within the reach of ordinary consumers.   Shein's popularity has soared in recent years, due in part to its unique, technology-driven model that accurately and efficiently projects customer demand.   This "on demand" model allows Shein to identify predicted fashion trends and offer anticipated consumer preferences for sale on Shein's website and mobile app.   For most SKUs marketed and sold by Shein on the platform, small initial quantities (i.e., between 100 to 200 items) of each product are produced to ensure affordable prices and a smaller carbon

footprint.  Shein then measures consumers' responses to those initial batches—if the product is popular, its third-party suppliers are able to track sales in real time within Shein's technology platform to increase production.  In this way, Shein utilizes technology in order to reduce waste and offer affordable prices to consumers.  Shein therefore delivers affordable, accessible fashion *not* through a "pattern of systemic criminal intellectual property infringement" as alleged by Plaintiffs, *see* FAC ¶ 4, but via a pioneering business model that delivers efficiency, avoids excess inventory risk, and eschews reliance on brick-and-mortar.  But, as with many other industry disruptors, Shein faces backlash in the form of false and misleading news articles, reports, and lawsuits.

The FAC represents Plaintiffs' second attempt to contort ordinary copyright and trademark-infringement claims into a RICO violation.  The original complaint was brought by three individual Plaintiffs with mainstream copyright and trademark infringement claims and was abandoned when Plaintiffs decided not to oppose Defendants' original Rule 12(b)(6) motion.  The FAC adds five additional Plaintiffs, who, like the original three, allege that Shein infringed on their ordinary copyrighted designs or trademarks.  *See* FAC ¶¶ 11-18.  But, the FAC's addition of five new Plaintiffs cannot save the RICO claim from dismissal.  The FAC, like the original complaint, still: (1) relies on garden-variety infringement claims that cannot serve as predicate acts under RICO; (2) fails to plausibly allege proximate cause as required by RICO; and (3) fails to adequately allege how any of the Defendants participated in the conduct of a RICO enterprise.  And, in addition, Plaintiffs do not come close to meeting the pleading standard for wire fraud as a RICO predicate act (which is seemingly substituted for the implicitly abandoned "criminal copyright" theory of the original incarnation of the RICO claim).  Each of these flaws independently warrants dismissal of the Twelfth Claim for Relief as further detailed in Section IV below.  Indeed, in contrast to the hyperbole of the FAC, it is no overstatement to suggest that, if accepted, Plaintiffs' RICO overreach and strained interpretation of

"criminal copyright infringement" would expose any typical multinational corporation with a global supply chain and a corporate structure designed to facilitate worldwide sales to RICO liability whenever ordinary copyright or trademark infringement is alleged.  And, allowing Plaintiffs to proceed with a predicate act of wire fraud would place any company selling or advertising an allegedly infringing product on the internet in peril of violating RICO.  This Court, like other courts before it, should reject such an expansive view of civil RICO.

Independent of the flaws in Plaintiffs' RICO claim, Plaintiff Jay Baron's claim for copyright infringement (the "Third Claim for Relief") must also be dismissed, as his so-called "original artwork" is composed of the kind of standard elements and stock phrases that courts have repeatedly found to be unprotected by copyright law.

Finally, Shein's separate Motion to Strike brought pursuant to Rule 12(f) should be granted because the FAC is riddled with inflammatory, immaterial and false allegations that have no possible bearing on the controversy at issue, and are presumably included to cast Defendants in a derogatory light and to divert attention from the futility of the claims at the heart of Plaintiffs' action.

## II.   RELEVANT FACTUAL ALLEGATIONS

### A.   The Parties: Plaintiffs and Shein

Plaintiffs are eight independent designers who market and/or sell their designs on a small scale online and/or in stores.  FAC ¶¶ 3, 11-18, 36.

According to the FAC, Shein is the "world's largest fashion retailer," selling its products on a worldwide basis.  *Id.* ¶ 24.  The FAC alleges that Shein sells "more clothing than any other [brand] in the world," *id.* ¶ 1, and that Shein's mobile app is the most downloaded application in the U.S., exceeding even Amazon, TikTok, and Instagram's.  *Id.* ¶ 25.  As an e-commerce-only retailer, Shein uses cutting-edge technologies, and a revolutionary business model to identify consumer trends and limit excess inventory.  *Id.* ¶¶ 4-5, 28-31.  Using this business model, Shein is able to gauge customer interest in real-time and provide feedback to its third-party

suppliers to increase or stop production based directly on market demand. *Id.* ¶ 47. As a result, Shein is able to, and does, add thousands of new items to its online store every day, and over a million new items each year. *Id.* ¶¶ 5, 30, 30 n.6. At the same time, Shein only produces 100 to 200 pieces of any product at launch, and responds with increased production only if demand warrants it. *Id.* ¶¶ 42, 47.

Plaintiffs allege that Shein (like all global businesses) has an organizational structure designed to facilitate its international operations. FAC ¶¶ 51-52. According to the FAC, Defendant Shein Distribution Corporation ("SDC") is a "domestic operating company" that handles "administrative functions," such as recruiting lawyers, accountants, and IT workers, as well as designing advertising materials and campaigns. *Id.* ¶ 62. Defendant Roadget Business Pte. Ltd. ("Roadget") is the owner of the Shein global trademarks and owns the Shein website and mobile app. *Id.* ¶¶ 21, 62. And, according to the FAC, Defendant Zoetop Business Company, Limited ("Zoetop") owns and operates Shein's websites and mobile apps.[1] *Id.* ¶¶ 22, 62.

## B.   Plaintiffs' RICO Allegations

In their original complaint, Plaintiffs attempted to construct a civil RICO claim premised on a predicate act of alleged criminal copyright infringement, based on allegations that Defendants infringed four of Plaintiffs' copyrighted designs and one trademark. Compl. ¶¶ 66-124. Perhaps recognizing the futility of their civil RICO claim, Plaintiffs filed an FAC, adding five new Plaintiffs who similarly allege that Defendants infringed on their copyrighted designs or trademarks—this time by means of criminal copyright infringement *and* wire fraud. FAC ¶¶ 14-18, 167-75 (adding wire fraud as a predicate act). But, Plaintiffs offer no factual allegations

---

[1] The FAC is riddled with allegations that are demonstrably false or presented in a manner that divorces them from the truth. In particular, the FAC's descriptions of many Shein entities are inaccurate. For example, Zoetop was a private Hong Kong Company that is no longer in operation. *See* ECF No. 19. Likewise, new Defendant Shein Fashion Group was dissolved and is no longer a legal entity. But as required for purposes of this Motion we take these averments, and others in the FAC, as true.

supporting a conclusion that their garden-variety infringement claims amount to criminal copyright infringement *or* wire fraud.

For example, Plaintiffs attempt to establish criminal copyright infringement through conclusory allegations that Defendants engage in "large-scale and systematic intellectual property theft." *Id.* ¶ 1. But, the FAC points to nothing more than the existence of Plaintiffs' ordinary infringement claims, two other copyright lawsuits filed by the same plaintiffs' counsel, and "reports" of "many other copyright infringement claims filed against Shein in recent months and years" (none of which are alleged to have resulted in an actual judgment of infringement).[2] *See, e.g., id.* ¶¶ 28, 70-71. Plaintiffs do not allege facts sufficient to support a conclusion that Shein engaged in "large scale counterfeiting or piracy"—rather, Plaintiffs allege the *opposite*—that Shein "produces very small quantities of [each] item for sale," at prices "low enough to render the garments truly disposable." *Id.* ¶¶ 42, 5. Similarly, although Plaintiffs acknowledge the global reach and complexity of Defendants' operations, they claim—with no factual support—that the Company's corporate structure is designed to "facilitate[]" purported intellectual property theft (rather than to optimize global operations). *See id.* ¶¶ 1, 2 n.2, 6, 48.

Plaintiffs attempt to salvage their RICO claim by adding wire fraud as a predicate act in their FAC. FAC ¶¶ 167-75. Specifically, Plaintiffs allege that Defendants engaged in a "scheme with the intent to defraud, deceive, and/or mislead the public, consumers, Plaintiffs, and others whose designs it has infringed (collectively referred to . . . as 'victims') . . . devised . . . to defraud the victims or to obtain the money or property of the victims by means of false or fraudulent pretenses or representation[.]" *Id.* ¶ 167. But, Plaintiffs do not (and cannot) allege facts

---

[2] As Plaintiffs note, Shein is one of the world's largest fashion and lifestyle retailers, adding over 6,000 products to its catalog on a daily basis. FAC ¶¶ 71, 24, 30 n.6. The "many . . . copyright infringement claims filed against Shein in recent months and years" speaks not to the validity of copyright infringement claims, but rather to Shein's status as a large and prominent retailer.

1  supporting a conclusion that Defendants' alleged copyright infringement was

2  effectuated through fraud.  And, fatally, Plaintiffs do not point to a single "false or

3  fraudulent . . . representation" made by any Defendant, let alone with the required

4  particularity, nor do they identify the role of each Defendant in the alleged scheme.

5  Based on their tenuous claims of criminal copyright infringement and wire

6  fraud, Plaintiffs seek damages in the form of, among other things, diversion of trade,

7  lost profits, and diminishment in value of their art, rights, and reputation.  FAC ¶¶ 81,

8  92, 99, 108, 124, 138, 154, 162, 179.

9  ## III.   LEGAL STANDARD

10  Under Rule 12(b)(6), dismissal is required where the complaint "lacks a

11  cognizable legal theory or sufficient facts to support a cognizable legal theory."

12  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

13  Whether a complaint contains sufficient factual matter turns on whether the claim

14  stated is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl.*

15  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide

16  the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

17  and a formulaic recitation of the elements of a cause of action will not do[.]  Factual

18  allegations must be enough to raise a right to relief above the speculative level[.]"

19  *Twombly*, 550 U.S. at 555.

20  ## IV.   PLAINTIFFS' RICO CLAIM SHOULD BE DISMISSED FOR

21  FAILURE TO STATE A CLAIM

22  To state a civil RICO claim, a plaintiff must allege (1) conduct (2) of an

23  enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

24  (5) causing injury to [its] business or property.  *Swartz v. KPMG LLP*, 476 F.3d 756,

25  760-61 (9th Cir. 2007).  Here, the FAC fails to adequately allege at least four of these

26  five elements: conduct, enterprise, racketeering activity, and causation.

27

28

DEFS.' MEM. OF P. & A. ISO MOTION TO DISMISS PLS.' THIRD AND TWELFTH
CLAIMS FOR RELIEF AND MOTION TO STRIKE PORTIONS OF THE FAC

### A.    Plaintiffs' Garden-Variety Infringement Claims Cannot Serve as Predicate Acts Under RICO.

As an initial matter, Central District precedent clearly holds that garden-variety copyright infringement claims "cannot serve as predicate acts to establish a RICO violation." *Stewart v. Wachowski*, 2005 WL 6184235, at *6 (C.D. Cal. June 14, 2005); *see also McZeal v. Amazon Servs., LLC*, 2021 WL 5213099, at *5 (C.D. Cal. Nov. 8, 2021) ("courts have recognized that ordinary trademark infringement claims cannot be contorted into a RICO violation"), *aff'd*, 2023 WL 3563009 (9th Cir. May 19, 2023).  But, garden-variety infringement claims are precisely what Plaintiffs allege here, and Plaintiffs' attempt to transform their claims into criminal copyright infringement fall flat.  This alone necessitates dismissal of Plaintiffs' RICO claim.

In *Stewart*, this District first concluded that, while criminal copyright can serve as a predicate act under RICO, there was no "Congressional intent to expand RICO liability to *all* knowing copyright infringement, including acts that cannot be characterized as counterfeiting or piracy[,]" and therefore held that such acts cannot serve as predicate acts to establish a RICO violation.  *Id.* at *6, *15 (granting motion to dismiss RICO claims premised on allegations of ordinary copyright infringement) (emphasis added).  Since then, courts in the Central District have consistently held that garden-variety copyright infringement claims cannot serve as predicate acts to establish a RICO violation.  *Boyman v. Disney Enters., Inc.*, 2018 WL 5094902, at *5 (C.D. Cal. June 1, 2018) (granting motion to dismiss where "purported copyright infringement" did not "constitute RICO predicate acts as a matter of law"); *Steward v. West*, 2013 WL 12120232, at *6 (C.D. Cal. Sept. 6, 2013) (granting motion to dismiss RICO claim because "the alleged acts of copyright infringement are neither counterfeiting nor piracy"); *MHF Zweite Acad. Film GmbH & Co. KG v. Warner Bros Ent. Inc.*, 2012 WL 13012677, at *2-3 (C.D. Cal. Aug. 13, 2012) (denying motion for leave to amend complaint to add RICO claim premised on ordinary copyright infringement); *Hunter v. Tarantino*, 2010 WL 11579019, at *10 (C.D. Cal.

July 15, 2010) (granting motion to dismiss because "copyright infringement beyond piracy or counterfeiting . . . cannot serve as the predicate offense for Plaintiff's RICO claim"); *see also McZeal*, 2021 WL 5213099, at *5 (granting motion to dismiss because "ordinary trademark infringement claims cannot be contorted into a RICO violation"). Courts outside the Central District (but still within the Ninth Circuit) have likewise dismissed RICO claims predicated on copyright infringement absent allegations of counterfeiting or piracy. *See Robert Kubicek Architects & Assocs. Inc. v. Bosley*, 2012 WL 3149348, at *2 (D. Ariz. Aug. 1, 2012).

These precedents find support in the legislative history of the Anticounterfeiting Consumer Protection Act of 1996 ("Anticounterfeiting Act")—which "reveals that Congress's true intent" in adding criminal copyright infringement to the list of RICO predicate acts was "simply to increase the available penalties for counterfeiting and piracy[,]" and not to criminalize all copyright infringement, *Stewart*, 2005 WL 6184235, at *5—and the criminal copyright statute itself, 18 U.S.C § 2319, which was enacted to "strengthen the laws against record, tape, and film piracy[,]" *id.* at *5 (citing *Dowling v. United States*, 473 U.S. 207, 225 (1985)), and was later revised to "expand the types of *counterfeiting* activities punishable as felonies and not to work any other substantive change to the section." *Id.* at *6 (emphasis added); *see also* Onimi Erekosima & Brian Koosed, *Intellectual Property Crimes*, 41 AM. CRIM. L. REV. 809, 829 (Spring, 2004) ("Enacted in October 1992, the Copyright Felony Act responded primarily to the growing problem of large-scale computer software piracy.").

For criminal copyright infringement to serve as a RICO predicate act, Plaintiffs must allege copyright infringement that rises to the level of *piracy or counterfeiting*. *See, e.g.*, *Stewart*, 2005 WL 6184235, at *6. Courts have found large-scale counterfeiting or piracy sufficient to constitute criminal copyright infringement only where the allegations implicate an exceptionally high volume of allegedly infringing items that typically have a relatively high aggregate retail value. *See, e.g.*, *United*

*States v. Larracuente*, 952 F.2d 672, 673 (2d Cir. 1992) (defendant bootlegged thousands of copyrighted films, with an aggregate value exceeding $190,000, via use of a "counterfeiting laboratory"); *United States v. Ndhlovu*, 510 F. App'x. 842, 846 (11th Cir. 2013) (defendant committed "high-volume counterfeit manufacturing" of over 6,500 infringing CDs and DVDs with an aggregate retail value of over $100,000); *United States v. Chalupnik*, 514 F.3d 748, 750-51 (8th Cir. 2008) (defendant engaged in counterfeiting scheme involving nearly 4,000 infringing CDs and DVDs with an aggregate retail value of over $100,000). Allegations of small-scale infringements are simply insufficient to constitute criminal copyright infringement. *See Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 23 F. Supp. 3d 173, 192 (S.D.N.Y. 2014) (finding that "over 100 pieces of allegedly infringing jewelry . . . does not constitute large-scale organiz[ed] counterfeiting schemes cognizable under § 2319"); *see also* Melville B. Nimmer et al, 5 Nimmer on Copyright § 15.05 ("Only the most egregious instances of criminal copyright infringement have ever been upheld as predicate offenses to racketeering charges under RICO.").

Here, Plaintiffs allege nowhere near the "large-scale" piracy meant to be addressed by § 2319. Indeed, Plaintiffs allege the opposite—that Shein sold a modest number of infringing products with a very modest aggregate retail value. FAC ¶¶ 76-78, 87-89, 95-96, 102-05, 112-13, 118-21, 128-29, 134-35, 149-51, 157-59. As Plaintiffs acknowledge, Shein "produces very small quantities of [each] item for sale," with the "initial production run . . . as low as 100-200 units per SKU, compared to the thousands of pieces typically produced by traditional peer retailers." *Id.* ¶ 42. The FAC also shows that the items at issue sold for extremely modest prices. *See id.* ¶ 79 (showing the "Make it Fun" print sold for just $3 on the Shein website), *id.* ¶ 20 (showing a price of $1.30 and $1.70 for the hair clips), *id.* ¶ 151 (showing a price of $8.00 for the skull garment), *id.* ¶ 5 (alleging that Shein items are offered for sale at

prices "low enough to render the garments truly disposable").[3]  Thus, even accepting Plaintiffs' allegations as true, the "very small quantities of [each] item [available] for sale," combined with the low price point of Shein's allegedly infringing products, simply does not bring Shein's alleged infringement in line with that contemplated by § 2319.

Plaintiffs' attempt to transform ordinary copyright infringement claims into predicate acts of criminal copyright infringement in order to concoct a civil RICO claim should therefore be rejected.

## B.    Plaintiffs' Allegations of Wire Fraud As a RICO Predicate Act Are Also Insufficient.

The FAC's identification of wire fraud as an alternative predicate act does not salvage their RICO claim for several independent reasons.   First, a wire fraud violation requires plausible allegations of: (1) the formation of a scheme to defraud; (2) the use of United States wires (or causing a use of the United States wires) in furtherance of the scheme; and (3) specific intent to deceive or defraud.   *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007).   But ordinary claims of copyright infringement do not and cannot constitute a "scheme to defraud." ~~*See infra* Section IV.B.1.~~

Second, allegations of wire fraud, including those made in support of a RICO claim, must still satisfy the heightened pleading requirements of Rule 9(b).   *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1204 (C.D. Cal. 2011); *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 743 (C.D. Cal. 2022), *opinion clarified by* 2022 WL 19425927 (C.D. Cal. Mar. 2, 2022).   This requires that a plaintiff "detail with particularity the time, place, and manner of each act of fraud[.]"   *Id.*   And,

---

[3] Although some of the screen captures in the FAC are pixelated and/or do not include price, *see id.* ¶¶ 89, 96, 105, 129, 135 159, it is reasonable to infer that the other items at issue were sold at similarly low prices.

Plaintiffs "may not simply lump together multiple defendants without specifying the role of each defendant in the fraud[,]" *In re Toyota Motor Corp.*, 826 F. Supp. 2d at 1201, they must, at a minimum, "identif[y] the 'role of [each] defendant[] in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765. Here, as explained below, the FAC fails both to identify with particularity any affirmative representations by any Defendant and fails to identify the role played by each individual defendant in the alleged RICO fraudulent scheme.

### 1.  Plaintiffs' Ordinary Infringement Claims Cannot Constitute Wire Fraud.

Just as Plaintiffs' garden-variety infringement claims are insufficient to state a RICO claim using criminal copyright infringement as the predicate act, neither can garden-variety infringement claims serve as a cognizable RICO predicate act by characterizing them under the rubric of "wire fraud."[4] *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1081 (C.D. Cal. 2012).

The principal allegation underlying Plaintiffs' assertion of wire fraud is that "Shein knowingly devised . . . a scheme or artifice to defraud [the public, consumers, *Plaintiffs, and others whose designs it has infringed*] . . . by means of false or fraudulent pretenses or representation[.]" FAC ¶ 167 (emphasis added). But, like in *Wecosign*, "[t]his is simply a restyling, if not purely a reiteration," of Plaintiffs' infringement claims, which are not cognizable RICO predicates. 845 F. Supp. 2d at 1081; *see also Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996) ("[b]ecause appellants' RICO counts do no more than allege copyright infringement under the label of mail and wire fraud, and copyright infringement is not a predicate act under RICO, the district court properly concluded that appellants failed to state a claim"),

---

[4] Indeed, if this were the case, every infringement dispute could conceivably be brought as a RICO violation. *See, e.g.*, *Patrizzi v. Bourne in Time, Inc.*, 2012 WL 4833344, at *5 (S.D.N.Y. Oct. 11, 2012) ("All businesses use interstate mail or wires. Congress did not intend that every trademark dispute would be brought under RICO.").

*overruled on other grounds by Skidmore ex rel. Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

Therefore, Plaintiffs cannot satisfy even the first element of wire fraud (a "scheme to defraud") because "a scheme to infringe copyrights is not a scheme or artifice proscribed [by] the mail fraud or wire fraud statutes." *SolarCity Corp. v. Pure Solar Co.*, 2016 WL 11019989, at *7 (C.D. Cal. Dec. 27, 2016); *see also Bryant v. Mattel, Inc.*, 2010 WL 3705668, at *5 (C.D. Cal. Aug. 2, 2010) (some torts—including copyright infringement—"cannot be effectuated through fraud").

## 2. The FAC Fails to Identify, With Particularity, Any Affirmative Misrepresentation Made By Any Defendant

Additionally, the first element of wire fraud requires an "*affirmative, material misrepresentation.*"[5] *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 4890594, at *11 (N.D. Cal. Oct.30, 2017) (emphasis added). A misrepresentation is generally understood to be "[t]he presentation of false information on which another is bound to rely." *Misrepresentation*, BOUVIER LAW DICTIONARY (Desk ed. 2012); *see also* Cornell Law School, Legal Information Institute ("A misrepresentation is a false or misleading statement[.]"), https://www.law.cornell.edu/wex/misrepresentation.  As noted above, under Rule 9(b)'s pleading standards, Plaintiffs must plead not only an affirmative misrepresentation, but must identify the "who, what, when, where, and how" of the alleged misrepresentation, "what is false or misleading about [the] statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs' FAC falls far short of this standard.  In fact, Plaintiffs do not allege that Shein made *any* affirmative misrepresentation.  Rather, Plaintiffs allege only that

---

[5] Nondisclosure can form the basis of a scheme to defraud, but "only when there exists an independent duty (either fiduciary or derived from an explicit and independent statutory requirement) and such a duty has been breached." *In re ZF-TRW,* 601 F. Supp. 3d at 743.  Plaintiffs allege no such duty here (nor can they).

"consumers and others relied on Shein's *explicit or implicit fraudulent representation that it owned the copyrights to the designs displayed on its App* and/or its fraudulent omission[6] that LATR is in fact a method of facilitating intellectual property theft." FAC ¶ 175 (emphasis added). But, Plaintiffs point to no "explicit . . . representation" by Defendants that Shein "owned the copyrights to the designs displayed on its App."[7] *Id.* In addition to this fatal flaw, Plaintiffs fail to allege which Defendant made the alleged misrepresentation, when the alleged misrepresentation was made, where the alleged misrepresentation was made, and how the alleged misrepresentation was made. This is patently insufficient, and therefore Plaintiffs' claim for wire fraud as a predicate act must be dismissed. *See Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (dismissing wire fraud as a predicate act where plaintiff made "no claim of misrepresentation by the insurance agency that sold him the Annuity").

The FAC alleges that "[i]t is not possible for Plaintiffs to plead with particularity all instances wire fraud [*sic*] that advanced, furthered, executed, and concealed the scheme because the particulars of many such communications are within the exclusive control and within the exclusive knowledge of Shein and other presently unknown individuals." FAC ¶ 175. But Rule 9(b) and associated Ninth Circuit case law is clear—a "pleader of fraud" must detail, with particularity, "the time, place, and manner of *each act* of fraud, plus the role of each defendant in each scheme." *In re Toyota Motor Corp.*, 826 F. Supp. 2d at 1201 (emphasis added). This remains true even where certain knowledge might be in the hands of the defendants.

---

[6] Because Plaintiffs have not alleged that Shein owed an independent duty of disclosure, *see supra* note 5, Plaintiffs cannot predicate their claim for wire fraud on a "fraudulent omission."

[7] Although Plaintiffs also fail to identify an "implicit . . . representation" that Shein "owned the copyrights to the designs displayed on its App," the first element of wire fraud requires an "*affirmative . . .* misrepresentation." *In re Volkswagen*, 2017 WL 4890594, at *11 (emphasis added).

*In re ZF-TRW*, 601 F. Supp. 3d at 747 ("Although the Vehicle Manufacturer Defendants may know which, if any, party created each advertisement, Rule 9(b) requires pleading with particularity, which Plaintiffs have not done."). Regardless, Plaintiffs' contention that it is impossible for them to "plead with particularity *all* instances of wire fraud" is a red herring, as they have failed to plead even *one* affirmative misrepresentation that forms the basis of their wire fraud claim (and, consequently, have not identified which Defendant made the elusive "explicit or implicit fraudulent representation," how the representation was made, or where the representation was made). FAC ¶ 175 (emphasis added). For this independent reason, their RICO claim premised on wire fraud fails and must be dismissed.

### 3. The FAC Fails to Identify the Role of Each Defendant in the Alleged Fraudulent Scheme.

Finally, Plaintiffs have failed to identify the role of each Defendant in the alleged fraudulent scheme, as required by Rule 9(b). Plaintiffs' allegations of racketeering activity "repeatedly ascribe conduct to [Shein] or 'Defendants' generally," instead of "attribut[ing] specific conduct to individual defendants." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *see also, e.g.*, FAC ¶ 50 ("So far, for convenience, this complaint has referred to the wrongdoer as "Shein," as if it were a single business unit."); ¶¶ 167-75 (attributing conduct to "Shein"). Plaintiffs attempt to include descriptions of each Defendant's general business activities, *see* FAC ¶ 62, but this is not enough—Rule 9(b) "*requires more than detailed descriptions of a defendant's general business activities; it requires particular allegations of 'the circumstances constituting fraud.*'" *Drake v. Toyota Motor Corp.*, 2020 WL 7040125, at *11 (C.D. Cal. Nov. 23, 2020) (emphasis added). Plaintiffs, however, utterly fail to provide "detailed allegations of . . . the various roles *played* [by each defendant] *in the alleged conspiracy.*" *Id.* (emphasis added). Accordingly, Plaintiffs' wire fraud claim must be dismissed for this additional and independent reason. *See In re ZF-TRW*, 601 F. Supp. 3d at 747 (finding that

attributing "alleged misstatements only through umbrella terms that include several Defendants . . . and not to the individual corporate entities" fail to satisfy Rule (9)(b)"); *Drake*, 2020 WL 7040125, at *11 (granting motion to dismiss fraud-based claims where "there [were] no particularized allegations of misconduct" underlying fraud-based claims).

### C.      Plaintiffs Cannot Allege the Requisite Proximate Causation Under RICO.

Additionally, Plaintiffs do not have standing to sue under civil RICO, which requires Plaintiffs to show that the alleged RICO violation proximately caused their injuries. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).  Proximate causation under RICO requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v. City of New York,* 559 U.S. 1, 9 (2010).  A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Id.*  Plaintiffs' proximate cause allegations in the FAC fall far short of that required by RICO.

The Ninth Circuit's decision in *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) is instructive.  In *Sybersound*, the Ninth Circuit affirmed dismissal of a civil RICO claim premised on criminal copyright infringement, mail fraud, and wire fraud, holding that the plaintiff could not "overcome the proximate causation hurdle to assert a RICO violation[.]" *Id.* at 1149.  In its decision, the court identified three non-exhaustive factors to determine whether the RICO proximate causation requirement had been met, including "whether it w[ould] be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct[.]" *Id.* at 1147-48.  The court also relied on the Supreme Court's decision in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006), which found the absence of proximate causation where, among other things, the defendant's "lost sales could have resulted from factors other than petitioner's alleged acts of fraud[]" given that "[b]usinesses lose and gain customers for many reasons . . . ." *Sybersound*,

- 15 -

517 F.3d at 1148 (quoting *Anza*, 547 U.S. at 459).  Noting that "[t]he element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation[,]" the court found proximate causation lacking, as it would have to engage in "a speculative and complicated analysis" to determine what percentage of the plaintiff's decreased sales, if any, were attributable to the defendants' alleged RICO violation.  *Id.* at 1148, 1149 (quoting *Anza*, 547 U.S. at 460).

*Sybersound* dictates the result here.  Plaintiffs allege damages in the form of "diversion of trade, loss of profits, and a diminishment in the value of [their] designs and art, [their] rights, and [their] reputation."  FAC ¶¶ 81, 92, 99, 108, 124, 138, 154, 162, 179.  But, numerous other factors, aside from Defendants' alleged conduct, could have led to Plaintiffs' lost profits and any decline in business and reputation, including consumer preferences, economic changes, or the manner in which Plaintiffs operated their businesses (or the fact that, as alleged, Plaintiffs operated small businesses).  *See also Club One Casino, Inc. v. Sarantos*, 2018 WL 4719112, at *5 (E.D. Cal. Sept. 28, 2018) (finding that "numerous other factors, aside from defendants' alleged actions, could have led to plaintiffs' decline in business, such as the demand for table games in Fresno, a change in the local economy, or the manner in which plaintiffs operated their business"), *aff'd*, 837 F. App'x 459 (9th Cir. 2020).  As in *Sybersound*, the Court would have to engage in "a speculative and complicated" analysis to determine what damages, if any, are attributable to Defendants' alleged copyright infringement.  *Sybersound*, 517 F.3d at 1148-49.  Plaintiffs themselves acknowledge that "[s]uch damages are difficult to recover in law, because they are difficult to quantify, and are seen as inherently speculative."  FAC ¶ 32.  Accordingly, the Court should dismiss Plaintiffs' RICO claim for failure to adequately allege proximate causation.

**D.**   **The FAC Fails to Adequately Allege That Each Defendant Participated in the Conduct of a RICO Enterprise.**

A final, independent flaw of the FAC is Plaintiffs' failure to sufficiently allege that each Defendant participated in the "conduct" of a RICO "enterprise."

First, although the term "enterprise" is broadly defined to include "any . . . legal entity" or "group of individuals associated in fact," courts have frequently and "overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises." *Neerman v. Cates*, 2022 WL 18278377, at *6 (C.D. Cal. Dec. 28, 2022).

The FAC in this case is no different.   When stripped of its hyperbole and conclusory allegations, the FAC merely alleges that each of the Defendants engaged in ordinary and routine business conduct as part of a global group of affiliated companies.   *See* FAC ¶¶ 62 (alleging that SDC is a "domestic operating company" that has a "vertically integrated structure," and manages "administrative functions," such as hiring "lawyers, accountants, and related Information Technology workers" and creating "advertising materials and campaigns."); 15, 21 (alleging that Roadget owns the "Shein trademarks" as well as the U.S. website and mobile application); 22, 62 (alleging that Zoetop "owns and operates [Shein's] web sites and mobile apps" and "until recently owned the [Shein] trademarks.").   None of these routine business actions are wrongful or establish the existence of a RICO enterprise.[8]

Plaintiffs have also failed to sufficiently allege that each of the Defendants "participate[d] in the operation or management of the enterprise itself." *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).   This requires a "showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not

---

[8]At bottom, despite pages of prolix allegations, FAC ¶¶ 50-74, the FAC ultimately describes nothing more than a complex corporate structure as might be expected of a company doing business on a worldwide basis.   *Id.* ¶ 24.   That certain litigants may have difficulty identifying proper parties to name as defendants does not remotely establish that the structure qualifies as a RICO "enterprise."

just their *own* affairs." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001).  Aside from conclusory allegations and impermissible group pleading, the FAC fails to specifically allege that *any* individual Defendant participated in the "operation or management" of the alleged enterprise.  Rather, as discussed above, Plaintiffs merely allege that each Defendant engaged in ordinary business conduct.

## V.     PLAINTIFF BARON'S COPYRIGHT INFRINGEMENT CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

Separately, Plaintiff Baron's copyright infringement claim (the Third Claim for Relief) must be dismissed.  To establish a prima facie case of copyright infringement, a plaintiff must show (1) ownership of a valid copyright; and (2) copying of the protected elements of the work by the defendant.  *See Leadership Stud., Inc. v. ReadyToManage, Inc.*, 2017 WL 2408118, at *2 (C.D. Cal. June 2, 2017); *Apps v. Universal Music Grp., Inc.*, 283 F. Supp. 3d 946, 951-52 (D. Nev. 2017), *aff'd*, 763 F. App'x 599 (9th Cir. 2019).  To prove the second element, a plaintiff must show that the protected material is "original" and that there is "substantial similarity of the general ideas and expression between the copyrighted work and the defendant[s'] work." *Apps*, 283 F. Supp. 3d at 951-52; *see also Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003).  Plaintiff Baron's Third Claim for Relief fails to meet this standard.

First, Plaintiff Baron has failed to adequately allege ownership of a valid copyright.  As the FAC concedes, the Copyright Office refused Plaintiff Baron's copyright registration.  FAC ¶ 95.  "The Copyright Office is required to refuse to register claims to copyright that do not satisfy the copyright law or other legal or procedural requirements," and "[o]f the hundreds of thousands of applications containing millions of works submitted each year, the Office refuses only a small number for lack of creativity or noncompliance with other requirements."  United States Copyright Office, 2017 Annual Report at 4, https://www.copyright.gov/reports/annual/2017/ar2017.pdf;           United States

Copyright Office, 2020 Annual Report at 18, https://www.copyright.gov/reports/annual/2022/ar2022.pdf ("In FY 2022, the Office refused approximately 3.4 percent of the 486,428 claims received."). Given that Baron allegedly "complied with 17 U.S.C. § 411 in that the deposit, application, and fee required for registration [were] delivered to the Copyright Office in proper form," FAC ¶ 95, it is reasonable to infer that the Copyright Office rejected his application for lack of creativity and/or noncompliance with copyright law.

Indeed, Plaintiff Baron does not allege the copying of *original* elements. A plaintiff's work is not original if the work expresses "standard, stock, or common" elements that are "not protectable under copyright law." *Satava*, 323 F.3d at 810. Here, Baron's design is merely a generic nametag with the phrase "Trying My Best" included. FAC ¶ 96; *see also* Attachment 1. This design is "so commonplace . . . that to recognize copyright protection . . . effectively would give [Baron] a monopoly" on the nametag design. *Satava*, 323 F.3d at 812. In fact, a Google Image search for "Hello I'm trying my best designs" results in pages of nametags nearly identical to Baron's "original" artwork.[9] This commonplace nametag design is not protectable under copyright law.

Similarly, "[s]hort, stock phrases" are not copyright protectable. *See Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1156, *aff'd*, 690 F. App'x 519 (9th Cir. 2017); 37 C.F.R. § 202.1; *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1081 n.14 (9th Cir. 2000) ("Brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed."). For instance, in *Apps*, the court held that the plaintiff had no copyright protection for the phrase "I need to know now" in the chorus of her song, as this phrase "is not Apps's original phrase." 283 F. Supp. 3d at 952. Here, as in *Apps*, Baron's copyright infringement claim must fail. Neither phrase in Baron's artwork—

---

[9] *See* https://tinyurl.com/567emys6.

"Hello, I'm" or "Trying My Best"—is Baron's original phrase, so he has no copyright protection for either.

Because Baron's artwork "combine[s] several unprotectable ideas and standard elements[,]" he may not utilize copyright law to seize these elements for his exclusive use. *Satava*, 323 F.3d at 811. Baron's Third Claim for Relief must therefore be dismissed.

## VI.   THE COURT SHOULD STRIKE PLAINTIFFS' IMMATERIAL, IMPERTINENT, AND SCANADLOUS ALLEGATIONS UNDER FEDERAL RULE 12(F)

Finally, the Court should strike the immaterial, impertinent, and scandalous allegations that have no basis in truth and no bearing on Plaintiffs' claims. *See* FED. R. CIV. PROC. 12(f). The essential function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12129642, at *5 (C.D. Cal. July 31, 2013) (granting motion to strike allegations of blackmail where the plaintiff did not allege a cause of action based on this purported conduct).

Here, the FAC is riddled with inflammatory hearsay allegations regarding Shein's purported labor practices, environmental issues, and tax planning that have no relevance to the copyright and trademark-infringement claims at the heart of this case. Specifically, Defendants move to strike the following allegations from the FAC:

- FAC ¶ 1 at page 1, lines 12-15 (alleging that Shein is a "societal threat" contributing to "environmental damage, sweatshop (or worse) labor conditions, tax avoidance, child safety");
- *Id.* ¶ 1 at page 1 n.1, lines 21-23 (alleging that the "dangers posed by Shein" include "exploitation of trade loopholes" and "forced labor");
- *Id.* ¶ 2 at page 3, lines 1-4 (alleging that Shein "survives grave reports of slave labor");
- *Id.* ¶ 2 at page 2, lines 10-13 (alleging that Shein sells "Swastikas");

DEFS.' MEM. OF P. & A. ISO MOTION TO DISMISS PLS.' THIRD AND TWELFTH CLAIMS FOR RELIEF AND MOTION TO STRIKE PORTIONS OF THE FAC

- *Id.* ¶¶ 32-34 (alleging that Shein has been criticized regarding "Forced Labor," "Other labor violations," "Health hazards," "Environmental impact," and "Tax avoidance");

- *Id.* ¶ 37 at page 15, line 12 (alleging that Shein's products are "cut and sewn in a sweatshop");

- *Id.* ¶ 40 at page 16, line 23 (alleging that Shein "employs the sweatshop" version of a design process); and

- *Id.* ¶ 46 at page 19, lines 13-14 (alleging that Shein uses "questionable labor practices").

These allegations are impertinent and immaterial because they have no possible bearing on the controversy at issue. Instead, these allegations appear to be included solely to tarnish Defendants and cast them in an unfavorable and prejudicial light, and portend Plaintiffs' intention to engage in intrusive and burdensome discovery requiring Shein to refute the baseless and irrelevant allegations. *See, e.g.*, *Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*, 2018 WL 828099, at *4 (S.D. Cal. Feb. 12, 2018) (granting motion to strike where immaterial allegations were "likely intended to 'besmirch' Defendants and cast them in a derogatory light"); *Haddock v. Countrywide Bank, NA*, 2015 WL 9257316, at *15 (C.D. Cal. Oct. 27, 2015) (courts may strike allegations under Rule 12(f) when "allegations [are] purely designed to besmirch"). As such, these allegations should be stricken from the FAC.

## VII.   **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Third and Twelfth Claims for Relief and strike the FAC's immaterial, impertinent, and scandalous allegations with prejudice.

1   DATED:  December 1, 2023         PAUL HASTINGS LLP

2

3                                      By: */s/ Steven A. Marenberg*

4                                            Steven A. Marenberg

5                            *Attorneys for Defendants Shein Distribution Corporation, Roadget*

6                            *Business Pte. Ltd., and Zoetop Business Company, Limited*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' MEM. OF P. & A. ISO MOTION TO DISMISS PLS.' THIRD AND TWELFTH
CLAIMS FOR RELIEF AND MOTION TO STRIKE PORTIONS OF THE FAC

**L.R. 11-6.1 CERTIFICATION**

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,882 words, which complies with the word limit of L.R. 11-6.1.

PAUL HASTINGS LLP

DATED: December 1, 2023          By: */s/ Steven A. Marenberg*
                                      Steven A. Marenberg