**GLUCK LAW FIRM**
Jeffrey S. Gluck (SBN 304555)
 Jeff@Gluckip.com
16950 Via De Santa Fe
Rancho Santa Fe, CA 92067
Telephone: 310-776-7413

**ERIKSON LAW GROUP**
David Alden Erikson (SBN 189838)
 david@daviderikson.com
Antoinette Waller (SBN 152895)
 antoinette@daviderikson.com
S. Ryan Patterson (SBN 279474)
 ryan@daviderikson.com
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323-465-3100
Facsimile: 323-465-3177

**GRELL FEIST PLC**
Jeffrey E. Grell (*admitted pro hac vice*)
 jgrell@grellfeist.com
825 Nicollet Mall, Suite 625
Minneapolis, MN 55402
Telephone: 612-353-5530
Facsimile: 612-354-7230

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KRISTA PERRY, an individual; LARISSA MARTINEZ an individual; JAY BARON an individual; RACHEL PFEFFER, an individual; DIRT BIKE KIDZ, Inc., a California corporation; ESTELLEJOYLYNN, LLC, a New Jersey limited liability company; JESSICA LOUISE THOMPSON SMITH, an individual; LIV LEE, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>SHEIN DISTRIBUTION CORPORATION, a Delaware corporation; SHEIN FASHION | Case No. 2:23-cv-05551-MCS-JPR<br>Hon. Mark C. Scarsi<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br><br>**DATE: JANUARY 22, 2024<br>TIME: 9:00 A.M.<br>PLACE: COURTROOM 7C** |

GROUP, INC.; ROADGET BUSINESS
PTE. LTD; ZOETOP BUSINESS
COMPANY, LIMITED; CHRIS XU;
and DOES 1-10 inclusive.

Defendants.

OPPOSITION TO MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

II.   RELEVANT FACTUAL ALLEGATIONS ...................................... 1

III.  LEGAL STANDARD......................................................................... 2

IV.  PLAINTIFFS HAVE STATED A RICO CLAIM ........................ 2

      A.    Plaintiffs' criminal copyright infringement claims are properly pleaded................................................................................. 3

      B.    Plaintiffs have pleaded wire fraud. ....................................... 5

            1.    Plaintiffs have pleaded a scheme to defraud. ............................. 6

                 a)    A scheme to defraud does not require allegations of affirmatively false statements. ........................................... 6

                 b)    Regardless, Plaintiffs allege a scheme to defraud that involves affirmative misrepresentations. ................... 7

                 c)    A scheme to defraud can involve copyright infringement. ................................................................. 8

            2.    Plaintiffs' wire fraud allegations comply with Rule 9(b)............ 9

                 a)    Plaintiffs have provided Shein with sufficient information to prepare an adequate answer. ................... 10

                 b)    Plaintiffs sufficiently describe each Defendant's uses of the wires................................................................. 11

      C.    Plaintiffs have alleged injury "by reason of" Shein's acts of racketeering. ........................................................................... 13

      D.    Plaintiffs allege Defendants' participation in the conduct of a RICO enterprise....................................................................... 15

V.    BARON HAS ADEQUATELY PLED A CLAIM FOR COPYRIGHT INFRINGEMENT OF AN ORIGINAL WORK ........................... 17

VI.  THE SUPPOSEDLY IMPROPER ALLEGATIONS SHOULD NOT BE STRUCK................................................................................. 20

VII. CONCLUSION.................................................................................. 21

L.R. 11-6.1 CERTIFICATION .................................................................. 22

**CASES**

*Anza v. Ideal Steel Corp.*, 547 U.S. 451, 457-458 (2006)..........................................16

*Bianchi v. St. Farm Fire and Cas. Co.*, 120 F. Supp. 2d 837, 841 (N.D. Cal. 2000)24

*Boyle v. United States*, 556 U.S. 938, 946 (2009).....................................................21

*Boyman v. Disney Enters., Inc.*, 2018 WL 5094902 (C.D. Cal. June 1, 2018).......4, 5

*Bradshaw v. City of Los Angeles*, 2023 WL 3400634, *8 (C.D. Cal. March 10, 2023) .....................................................................................................................6

*Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1268 (C.D. Cal. 2007) .........................3

*Campolo v. Duel*, 2023 WL 2558562, *4 (C.D. Cal. Jan. 11, 2023) ........................12

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ......................19

*Cooper v. United States*, 639 F. Supp. 176 (M.D. Fla. 1986)............................10, 11

*Cuyuma SA v. Corona Seeds, Inc.*, 2019 WL 1878353, at *1 (C.D. Cal. Feb. 20, 2019) ......................................................................................................................24

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 3451 (1991)............23

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 11 (2010)....................................16

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992) ..................................15, 16, 18

*In re 2TheMart.com Secs. Litig.*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000)............25

*In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1062 (C.D. Cal. 1991) .............7

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 4890594 at *11 (N.D. Cal. Oct. 30, 2017)...................................................8

*Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1329 (7th Cir. 1994) ..........................14

*Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959 (N.D. Cal. 2019) ...................................................................................................3, 4

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005)..................................................................................................................19, 20

*Los Angeles Waterkeeper v. SSA Terminals, LLC*, 2023 WL 7960773, *6 (C.D. Cal. Nov 14, 2023) ........................................................................................................2

*Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967) ....................................8

*Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002).........................................23

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)..........14

*Neerman v. Cates*, 2022 WL 18278377, *6 (C.D. Cal. Dec. 28, 2022)....................20

*Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1181 (9th Cir. 1983) ..........................22

*Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) ...................................4

*Optima Tax Relief LLC v. Channel Clarity, Inc.*, 2015 WL12765016, *3 (C.D. Cal. Aug. 26, 2015) ......................................................................................................24

*Painters and Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 520 F. Supp.3d 1258, 1266 (C.D. Cal. 2021) ...................................7

*Pereira v. United States*, 347 U.S. 1, 8 (1954).....................................................13

*Ramirez v. Bank of America, N.A.*, 634 F. Supp.3d 733, 740 (N.D. Cal. 2022) .......13

*Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)................................................21

*River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992) ...............................................................................................................19

*Schreiber Dist. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.3d 1393, 1401 (9th Cir. 1986) ...............................................................................................................15

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985) .........................................6

*Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1075 (9th Cir. 2020)............................23

*Stewart v. Wachowski*, 2005 WL 6184235, at *6 (C.D. Cal. June 14, 2005) ............4

*Sussex Fin. Enter., Inc. v. Bayerische Hypo-und Vereinsbank AG*, 2010 WL 94272, *3 (N.D. Cal. Jan. 6, 2010) .........................................................................14

*Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004)................................................23

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008)...........17, 18

*teamLab Inc. v. Museum of Dream Space, LLC*, 650 F. Supp.3d 934, 955 (C.D. Cal. 2023) ...............................................................................................................18

*UAB "Planner5D" v. Facebook, Inc.*, 534 F. Supp. 3d 1126, 1135 (N.D. Cal. 2021) ............................................................................................................22

*United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F3d 1048, 1052 (9th Cir. 2001) ...............................................................................................................11

*United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir 2009)11

*United States v. Allen*, 155 F.3d 35, 42 (2d Cir. 1998) ............................................21

*United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979)...................................8

*United States v. Benny*, 786 F.2d 1410 (9th Cir. 1986) .............................................8

*United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir. 1980) ...............................7

*United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010) ...................................8

OPPOSITION TO MOTION TO DISMISS

*United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978) ................................24

*United States v. Hussain*, 972 F.3d 1138, 1143 (9th Cir. 2020) ..............................6

*United States v. MyLife.com, Inc.*, 499 F. Supp.3d 757, 761 (C.D. 2020)...............12

*United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002) ...........................14

*United States v. Turkette,* 452 U.S. 576, 592 (1981) ...................................................1

*Virden v. Graphics One*, 623 F. Supp. 1417, 1422 (C.D. Cal. 1985) ........................6

*Watts v. Allstate Indem. Co.*, 2009 WL 19055047, *6 (E.D. Cal. July 1, 2009).......21

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) ..............25

## STATUTES

17 U.S.C. § 506 .......................................................................................................3

18 U.S.C. § 1343 .....................................................................................................7

18 U.S.C. § 1964(a)...............................................................................................18

18 U.S.C. § 2319 .....................................................................................................3

18 U.S.C. §§ 1962(c).............................................................................................3

1964(c) ...................................................................................................3, 15, 18

OPPOSITION TO MOTION TO DISMISS

## I.  INTRODUCTION

Plaintiffs are independent artists whose intellectual property has been hijacked, infringed, and exploited by an international, multibillion-dollar conglomerate that hides in an ever-changing maze of mirrors. Plaintiffs are very real people, but this conglomerate is a cyber-entity that exists only in the ether of the internet, where it can change its name, its location, its face in a nanosecond. Although someone, somewhere created this entity, it appears to be governed primarily—if not exclusively—by artificial intelligence. The entity's mission, however, is clear: make money for the creator by any means necessary—rob, steal, cheat, manipulate, misappropriate—make money for the creator. Based on these facts alone, anyone would call the creator a criminal mastermind, but the creator's real genius is that this entity, this cyber-criminal, leaves no fingerprints or DNA at the scene of its crimes, enabling the creator to repeatedly feign ignorance or to shirk responsibility, while reaping all the profit from the crimes committed on its behalf.

When the Racketeer Influenced and Corrupt Organizations ("RICO") Act was passed by Congress in 1970, RICO was intended to address the serious threat posed by organized crime to the Nation's economy and to attack the source of organized crime's "*economic power itself, and the attack must take place on all fronts.*" *United States v. Turkette*, 452 U.S. 576, 592 (1981). When it passed RICO, Congress could not have foreseen the internet, artificial intelligence, or autonomous algorithms, but today, this is where the battle against organized crime is being fought, and Plaintiffs have brought that battle to this Court. Although the nature of organized crime has changed since 1970, the Court should deny Defendants' motion to dismiss and affirm that RICO remains an effective weapon in this battle, no matter how organized crime evolves or what form it tries to take.

## II.  RELEVANT FACTUAL ALLEGATIONS

Plaintiffs each allege what Shein likes to cavalierly call "garden variety copyright infringement." One thing that makes the infringements something more

OPPOSITION TO MOTION TO DISMISS

than garden-variety is that each infringement has been specifically designed to greatly harm its victims. In fact, Plaintiffs allege that Defendants developed genius level intelligence and technology to accomplish their wrongdoing--finding the most damaging way to steal works.

But another way the alleged infringements rise far above the level of the ordinary is that they are part of a systematic mechanism to misappropriate the most valuable designs the world has to offer, specifically gems from smaller time vulnerable artists and designers. Shein developed the highest technology to facilitate such deeds. And somehow Shein has developed a tolerance to bad press, and as a result can get away with these acts.

### III.   LEGAL STANDARD

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Los Angeles Waterkeeper v. SSA Terminals, LLC*, 2023 WL 7960773, *6 (C.D. Cal. Nov 14, 2023) (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-996 (9th Cir. 2014)). First, the complaint must give fair notice and enable the opposing party to defend itself effectively. *Id.* Second, the factual allegations taken as true must plausibly suggest an entitlement to relief. *Id.* Generally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss. *Id.* Because Shein's motion does no more than present an opposing explanation of Shein's conduct that is as plausible as the explanation presented by Plaintiffs, Shein's motion must fail.

### IV.   PLAINTIFFS HAVE STATED A RICO CLAIM

Plaintiffs have stated a claim for relief under the RICO Act, 18 U.S.C. §§ 1962(c), 1964(c). Contrary to Shein's assertions, Plaintiffs have pled both criminal copyright infringement, and wire fraud. Plaintiffs have also pled an

OPPOSITION TO MOTION TO DISMISS

actionable enterprise and injury "by reason of" the RICO violation.

**A.      Plaintiffs' criminal copyright infringement claims are properly pleaded.**

The elements of criminal copyright infringement "are easily gleaned from the straightforward statutory language" of 18 U.S.C. § 2319—1) infringement of a copyright; 2) done willfully; 3) for purposes of commercial advantage or private financial gain. 17 U.S.C. § 506, 18 U.S.C. § 2319; *see also*, *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1268 (C.D. Cal. 2007)). A RICO claim may be predicated on a violation of 18 U.S.C. § 2319. *See* 18 U.S.C. 1961(1). In *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959 (N.D. Cal. 2019), the court held that copyright infringement *can* support a RICO claim regardless of whether the infringement constitutes counterfeiting or piracy, which are mostly trademark concepts. *Id.* at 971.

Shein attempts to obscure this clear statutory standard by citing various *unreported* cases and arguing that "garden-variety" copyright infringement claims (whatever that means) are somehow excluded. (*ECF 32-1* at 7-10.) Far from creating a bright-line limitation on the types of copyright infringement that may serve as predicate RICO acts, the decisions in each of the cited cases were limited to the specific allegations at issue; all of which are distinguishable from the present case.

For example, Shein asserts that "garden-variety copyright infringement claims 'cannot serve as predicate acts to establish a RICO violation.'" (*Id.* at 7 quoting *Stewart v. Wachowski*, 2005 WL 6184235, at *6 (C.D. Cal. June 14, 2005).) Shein's "quotation" is misleading—the actual quote is: "the court finds that the acts of copyright infringement ***alleged in this action*** cannot serve as predicate acts to establish a RICO violation." *Id.* (emphasis added). Moreover, Shein fails to mention that *Stewart* "is no longer tenable." *Kevin Barry Fine Art Assocs.*, 391 F.Supp.3d at 971. The Ninth Circuit has explicitly rejected *Stewart*'s narrow approach. *Id.* (analyzing *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007)). In short,

3                                    OPPOSITION TO MOTION TO DISMISS

1  *Stewart* is not good law—and has not been for over a decade.

2      Further, the *Stewart* decision was likely motivated by the meritless nature of

3  the copyright claims at issue. *Stewart* involved "idea theft," i.e., defendants stole the

4  plaintiff's ideas to make the Terminator and Matrix movies. *Stewart*, 2005 WL

5  6184235 at *1, 2.

6      Similarly, in *Boyman v. Disney Enters., Inc.*, 2018 WL 5094902 (C.D. Cal.

7  June 1, 2018), a pro se plaintiff brought outlandish copyright-based RICO claims.

8  Again, the court did not hold that RICO could never be predicated on copyright

9  infringement; it simply held that the claims—*as alleged*—were not RICO predicate

10  acts. *Id.* at *5. Moreover, the plaintiff alleged only one act of infringement. As the

11  court noted, "a single predicate act cannot establish a pattern of racketeering" under

12  RICO. *Id.*

13      Unlike the copyright cases cited by Shein, Plaintiffs allege the precise type of

14  infringement that Congress intended to prohibit—the intentional large-scale

15  reproduction of copyrighted works for commercial gain. (*ECF 23* at ¶¶ 4-6

16  (describing Shein's infringing activities as "part and parcel of Shein's 'design'

17  process and organizational DNA;" and Defendants' business model as "a pattern of

18  systematic criminal intellectual property infringement… baked in from the very

19  beginning").)

20      Indeed, Shein concedes that such allegations are properly considered

21  predicate acts under RICO. (*ECF 32-1* at 23-28.) Nonetheless, it argues that its

22  alleged infringement falls short because it does not rise to the level of "large-scale"

23  piracy or counterfeiting. Notably, it provides no citation for the "large-scale"

24  wording it offers. Shein, further, does not bother to explain what "piracy" or

25  "counterfeiting" means or how those terms differ from other forms of infringement.

26  Rather, Shein argues that its infringement was "small-scale," citing Plaintiffs'

27  allegations that a modest amount of goods was sold at highly discounted prices. This

28  argument is too clever by half.

Plaintiffs allege that Shein employs a cutting-edge technological process that uses artificial intelligence to identify and copy popular designs. (*ECF 23* at ¶¶ 5, 24, 29, 36.) Shein's claim that such allegations are not actionable because it constitutes de minimis infringement—small numbers of infringing units produced and sold at rock-bottom prices—cannot be taken seriously.[1] Otherwise, Shein would be able to escape liability by simply carefully monitoring its production numbers and price points.

RICO should "be liberally construed to effectuate its remedial purposes." *Odom*, 486 F.3d at 547 (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985) (internal citations omitted)). Shein's failure to cite any post-*Odom* Ninth Circuit case to support their proposition that only "large-scale" infringement may be a predicate act under RICO is understandable—no such precedent exists. Even if it did, Shein's argument falls flat because Plaintiffs clearly allege that the core of Shein's business is a high-tech copyright infringement robot, supercharged by artificial intelligence and a proprietary algorithm.

**B.    Plaintiffs have pleaded wire fraud.**

To establish wire fraud, the plaintiff must allege three elements: (1) a scheme to defraud, (2) use of the wires in furtherance of the scheme, and (3) a specific intent to deceive or defraud. *United States v. Hussain*, 972 F.3d 1138, 1143 (9th Cir. 2020).[2] Shein argues that Plaintiffs' wire fraud allegations are insufficient because they have not pled a scheme to defraud or each defendants' use of the wires in furtherance of the scheme. (*ECF 32-1* at 11-15.) Shein's arguments are misplaced.

---

[1] *See Bradshaw v. City of Los Angeles*, 2023 WL 3400634, *8 (C.D. Cal. March 10, 2023) (denying a motion to dismiss a RICO claim where the complaint alleged some "economic injury" and holding that even if the plaintiff could not prove a specific amount of damage, it "may nevertheless be entitled to nominal damages").

[2] The mail and wire fraud statutes "are considered of equal scope and are construed with reference to each other." *Virden v. Graphics One*, 623 F. Supp. 1417, 1422 (C.D. Cal. 1985).

### 1.      Plaintiffs have pleaded a scheme to defraud.

When the federal wire fraud statute (18 U.S.C. § 1343) refers to a "scheme to defraud," it refers to far more than common law fraud. The nature of a "scheme to defraud" is measured by a non-technical standard. *United States v. Bohonus,* 628 F.2d 1167, 1171 (9th Cir. 1980). The wire fraud statute condemns any scheme that is "contrary to public policy or which fail[s] to measure up to the reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *Id.*

### a)      A scheme to defraud does not require allegations of affirmatively false statements.

The Ninth Circuit has specifically held that "[t]he fraudulent scheme need not be one that includes an affirmative misrepresentation of fact, … it is only necessary for the [plaintiff] to prove that the scheme was calculated to deceive persons of ordinary prudence." *Bohonus*, 628 F.2d at 1172. The wire fraud statute is violated by "the telling of a half-truth, independent of any responsibilities arising from a trust relationship."[3] *Painters and Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 520 F. Supp.3d 1258, 1266 (C.D. Cal. 2021). One may also engage in a scheme to defraud by acting "with reckless indifference to whether a representation is true or false." *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979). Moreover, "deception need not be premised upon verbalized words alone." *Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967). "The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance." *Id.* Accordingly, a scheme to defraud may involve affirmative misrepresentations, but a scheme to defraud does not ***require*** an

---

[3] *Compare with In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1062 (C.D. Cal. 1991) (stating that "absent an independent duty, such as a fiduciary duty or explicit statutory duty, failure to disclose cannot be the basis of a fraudulent scheme").

affirmative, material misrepresentation. (*ECF 32-1* at 12.)[4]

### b) Regardless, Plaintiffs allege a scheme to defraud that involves affirmative misrepresentations.

Shein's brief also ignores the fact that Plaintiffs allege many affirmative misrepresentations. For example, Plaintiffs describe how Shein's "byzantine structure" allows it to falsely "blame[] unnamed third part[ies] for any misconduct, and report[] (but not always accurately [i.e., falsely]) that sales were shockingly low." (*Id.* at ¶ 44, 57.) Plaintiffs repeatedly allege that, in its ordinary course of business, Shein makes the false claim that any transgression of intellectual property rights is "not Shein's fault" (*id.* at ¶ 44), "was committed by another company" (*id.* at ¶ 45), or was not committed by the entity that the victim contacted (*id.* at ¶¶ 61, 62). Plaintiffs also allege that Shein repeatedly and affirmatively misrepresents that it is a "unitary" company with 10,000 employees in 150 countries, when in fact "there is no one company employing 10,000 people." (*Id.* at ¶¶ 51-53.) Plaintiffs further allege that Shein misrepresents that its manufacturers and designers are "outside and independent," when in fact they are not. (*Id.* at ¶ 52.) Shein also allegedly makes the false claim that it "does not have access to information held by the company responsible for the design." (*Id.* at ¶ 72.) Finally, when caught infringing, Shein falsely represents that it will remove all infringing products. (*Id.* at ¶ 73.) Considering the plethora of affirmatively false statements that are part of

---

[4] Shein cites *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 4890594 at *11 (N.D. Cal. Oct. 30, 2017), which in turn relied upon *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010). In both of these cases, the schemes clearly involved affirmatively false representations and did not examine other violative schemes. *See id.* at 1067-68; *Volkswagen*, 2017 WL 4890594 at *15. *Green* further relied on *United States v. Benny*, 786 F.2d 1410 (9th Cir. 1986). *Benny* did not hold that a scheme to defraud required an affirmative misrepresentation. *Benny* simply states that "[p]roof of an affirmative, material misrepresentation supports a conviction of mail fraud without any additional proof of a fiduciary duty." *Id.* at 1418.

OPPOSITION TO MOTION TO DISMISS

Shein's alleged scheme to defraud, Shein's argument that Plaintiffs have not alleged any affirmatively false statements is, frankly, bizarre.

Plaintiffs have sufficiently alleged that Shein's conduct is contrary to public policy, fails to measure up to the reflection of moral uprightness, fundamental honesty, fair play, and right dealing in the general and business life of members of society. (*See ECF* 23 at ¶ 168 (paraphrasing *Bohonus,* 628 F.2d at 1171). Accordingly, Plaintiffs have pled a scheme to defraud, and Shein's motion to dismiss must be denied.

### c) A scheme to defraud can involve copyright infringement.

Shein also argues that a defendant's copyright infringement somehow immunizes them from any claim of wire fraud. (*ECF 32-1* at 11-12.) First, Plaintiffs do not simply restyle their copyright infringement claim as wire fraud. As set forth above, Shein's scheme to defraud involves much more than mere copyright infringement. It also involves an intentionally ambiguous and byzantine corporate structure that makes it nearly impossible for a plaintiff to identity who can be sued and where. (*ECF 23* at ¶ 57.) If a potentially responsible party is identified, Shein will further lie and blame other parties, either within or without its corporate structure. Shein will misrepresent that the sales of the product were very low or that it cannot find documents relating to the claim. (*Id.* at ¶ 44, 72.)

To be actionable, "it is only necessary for the [plaintiff] to prove that the scheme was calculated to deceive persons of ordinary prudence." *Bohonus*, 628 F.2d at 1172. All the false statements alleged by Plaintiffs are calculated to deceive victims, the public, the courts, and regulators about Shein's structure, who is responsible for any particular act committed by "Shein," the integrated or disintegrated relationship among Shein entities, whether and where Shein is subject to jurisdiction, and whether any human is responsible for its wrongful conduct versus a rogue robot. In light of the non-copyright related statements, Plaintiffs' wire fraud claims are adequately pled.

Plaintiffs' wire fraud claim is similar to those considered in *Cooper v. United States*, 639 F. Supp. 176 (M.D. Fla. 1986). In *Cooper*, the defendants were convicted of copyright conspiracy relating to certain sound recordings and of wire fraud arising out of that conspiracy. The court affirmed the defendants' wire fraud convictions, reasoning that the indictment "describes a scheme to fraudulently deprive 'copyright owners, sound recording companies and recording artists and musicians' of their rightful income and royalties and to fraudulently represent to the public and to others that certain sound recordings 'were produced by the manufacturers identified on the labels of said products' when, in fact, the products were not legitimately or lawfully reproduced.'" *Id.* at 180. Plaintiffs' claims mirror the claim in *Cooper.* (*ECF 23* at ¶¶ 167, 175.) Copyright infringement and wire fraud are not mutually exclusive claims. A defendant can be liable for violating one and/or both statutes.

### 2.    Plaintiffs' wire fraud allegations comply with Rule 9(b).

Federal Rule of Civil Procedure 9(b) requires that ***fraud*** be pled with particularity. *Odom*, 486 F.3d at 553. "The particularity requirement of Rule 9 is not intended to abrogate or mute the Rule 8 'notice' pleading standard . . ., and the two Rules must be read in harmony." FEDERAL CIVIL RULES HANDBOOK, p. 268 (West 2004). To comply with Rule 9(b) the plaintiff need only identify "the circumstances constituting the fraud so that the defendant can prepare an adequate answer from the allegations." *Odom*, 486 F.3d at 553. A complaint need not describe the time, place, and content of every instance of fraud; need not exclude all possibility of innocence; and need not exclude all possibility of honesty to give the particulars of fraud. *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir 2009). As to wire fraud, "[t]he only aspects … that require particularized allegations are the factual circumstances of the fraud itself." *Odom*, 486 F.3d at 554.

Moreover, "Rule 9(b) may be relaxed to permit discovery in a limited class of corporate fraud cases where the evidence of fraud is within the defendant's

OPPOSITION TO MOTION TO DISMISS

exclusive possession." *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F3d 1048, 1052 (9th Cir. 2001).

Further, Rule 9(b) applies only to allegations of fraud; "the non-fraud aspects of a RICO claim are not subject to Rule 9(b)." *Campolo v. Duel*, 2023 WL 2558562, *4 (C.D. Cal. Jan. 11, 2023).

### a) Plaintiffs have provided Shein with sufficient information to prepare an adequate answer.

Rule 9(b) does not require that the plaintiff plead granular details of specific transactions. *United States v. MyLife.com, Inc.*, 499 F. Supp.3d 757, 761 (C.D. 2020). "A complaint need not allege a precise time frame, describe in detail a single specific transaction or identify the particular method used to carry out the fraud." *Id.* Rule 9(b) is satisfied when a complaint "specifies a timeframe, … describe[s] the conduct that violates the laws cited, and why that conduct violates those laws." *Id.*

Plaintiffs satisfy these standards. As to the timeframe, Plaintiffs specifically plead the date that each design was first published, and that the infringement continues to the present (or until Shein pulled the design, which is a date that only Shein knows). (*ECF 23* at ¶ 171.) Regarding allegedly false or obfuscating statements made on Shein's website and app, Shein can easily review its records to determine when the offending statements and knock-off designs appeared on its own website and app. (*Id.* at ¶ 171(n).) Plaintiffs also specifically describe Shein's other conduct that violates section 1343 and why it violates section 1343. (*Id.* at ¶¶ 34, 36, 39, 42-45, 51-53., 57, 61-62, 72-73, 167-175.) Regarding Shein's direction of its law firms, those facts are currently protected by the attorney-client privilege, and Plaintiffs cannot possibly know when, where, or how Shein directed its counsel to obfuscate its corporate structure or deceive its victims. (*Id.* at ¶ 62.) Plaintiffs are further not obligated to describe the particulars of Shein's proprietary algorithm (i.e., software), the confidentiality of which Shein protects for obvious competitive reasons. (*Id.* at ¶¶ 1-6); *see also Ramirez v. Bank of America, N.A.*, 634 F. Supp.3d

733, 740 (N.D. Cal. 2022) (holding that the plaintiffs could rely on information and belief allegations when describing how the defendant's Refund Decision Tool program functioned). Plaintiffs have sufficiently pled the scheme to defraud.

>     **b)     Plaintiffs sufficiently describe each Defendant's uses of the wires.**

Plaintiffs are not required to identify the particular individual who authored or programmed a false statement appearing on a website or app, or who falsely stated that a particular Shein subsidiary was not involved in misappropriating a particular design. To violate the wire fraud statute, "[i]t is plainly not necessary … that the one charged be the one who physically performed the [wire transmission]; it is sufficient to show that the [transmission] was by someone connected with the scheme." *Odom*, 736 F.2d at 109. A defendant is liable for wire fraud "if they caused it to be done." *Pereira v. United States*, 347 U.S. 1, 8 (1954). "Where one does an act with knowledge that the use of the [wires] will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the [wires] to be used." *Id.* at 8-9. Accordingly, Plaintiffs allege that each Defendant "could foresee that the interstate wires would be used" and/or "acting singly and in concert, personally and through its enterprises, used the interstate wires or caused the interstate wires to be used 'for the purpose of' advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme to defraud the victims." (*ECF 23* at ¶¶ 169-170.) Regardless of the entity or individual who actually pushed the button to electronically publish the unlawful statements at issue, each Defendant could foresee that such electronic publication would occur in the normal course of Shein's business.

Moreover, Shein cannot speak as a unitary group and then fault Plaintiffs for attributing the violative statements to the group as a whole. (*ECF 23* at ¶ 51.) A plaintiff need not particularize its pleadings to each defendant when the defendants are related corporate actors who "can most likely sort out their involvement without

significant difficulty." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1329 (7th Cir. 1994). This rule makes particular sense where, as here, the corporate defendants are all represented by the same counsel and obviously see no conflict arising between speakers and non-speakers in the group.[5] *Sussex Fin. Enter., Inc. v. Bayerische Hypo-und Vereinsbank AG*, 2010 WL 94272, *3 (N.D. Cal. Jan. 6, 2010). Finally, when a RICO claim is predicated on mail or wire fraud,[6] the Ninth Circuit has held that "knowing participants in the scheme are legally liable for their co-schemers' use of the mails or wires." *United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002). Given that the defendants are jointly and severally liable for each other's acts of wire fraud, they must defend against all alleged acts of wire fraud regardless of whether they personally committed the acts. The plaintiff is only required to allege "the role of each defendant in the scheme." *Schreiber Dist. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.3d 1393, 1401 (9th Cir. 1986). Plaintiffs explicitly describe the roles played by each Defendant. (*ECF 23* at ¶ 19-23, 62.)

Shein has sufficient information to respond to Plaintiffs' allegations of fraud. If the Court dismissed the FAC for failure to abide by Rule 9(b), the Court would merely reward Shein for being good IP thieves and scam-artists, sending a message to the industry that such theft and schemes to defraud are permissible, so long as they are sufficiently concealed by impenetrable business structures, faceless executives and corporate subsidiaries, and the use of artificial intelligence that leaves no trace at the scene of the crime.

---

[5] In its motion, Shein demonstrates its ability to "prepare an adequate answer" on behalf of specific corporate defendants. (*ECF 32-1* at 4 n.1.)

[6] Shein relies on *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) to support its contention that the plaintiff must allege "specific conduct to individual defendants." (*ECF 32-1* at 14.) The RICO claim in *Moore*, however, was predicated on securities fraud, and since 1995, a plaintiff cannot even bring a civil RICO claim predicated on securities fraud unless the defendant has been criminally convicted of the securities fraud. 18 U.S.C. § 1964(c).

**C.      Plaintiffs have alleged injury "by reason of" Shein's acts of racketeering.**

A civil RICO plaintiff must be injured in its business or property "by reason of" the RICO violation. 18 U.S.C. § 1964(c). In *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992), the Supreme Court held that in order to satisfy RICO's "by reason of" requirement, a civil plaintiff must show "that the defendant's violation not only was the 'but for' cause of [its] injury, but was the proximate cause as well." *Id.* at 268. The Supreme Court further stated that proximate cause "demand[s] some direct relation between the injury asserted and the injurious conduct alleged." *Id.* "[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts … [is] generally said to stand at too remote a distance to recover." *Id.* at 268-269.

In the cases relied upon by Shein, none of the plaintiffs were the directly injured party—rather the plaintiffs were complaining of misfortunes visited upon third persons. For example, in *Holmes*, the plaintiff was a quasi-government insurer who sought to recover on behalf of its insureds (i.e., customers of a broker-dealer). The customers lost money when defendants manipulated the broker-dealer to engage in securities fraud. *Id.* at 262. After the collapse of the broker-dealer, the court appointed a trustee to oversee the liquidation of the broker-dealer. *Id.* The Supreme Court held that the insurer lacked standing under RICO because the link between the customers' harm and the stock manipulation scheme was "too remote," being "purely contingent" on the harm suffered by the broker-dealer. *Id.* at 271. The Supreme Court held that there was no reason to confer standing on the indirectly injured customers when the broker-dealer, now under the control of a court appointed trustee, "could be counted upon to bring suit for the law's vindication" and to recover on behalf of all creditors of the broker-dealer. *Id.* at 273-274. *See also Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 11 (2010) (for the purposes of collecting state sales tax, the defendant was statutorily obligated to report its internet cigarette sales to the state, not the city; thus, only the state—not the city—was

directly injured when the defendant failed to report its sales); *Anza v. Ideal Steel Corp.*, 547 U.S. 451, 457-458 (2006) (the plaintiff claimed that its competitor engaged in mail and wire fraud by failing to pay sales tax to the state on cash sales, thus enabling the competitor to undercut the plaintiff's prices and causing the plaintiff to lose sales; the Supreme Court held that the plaintiff lacked standing because the state—not the plaintiff—was the direct victim of the tax fraud).

Plaintiffs agree that *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008), is instructive, but not for the reasons cited by Shein. (*ECF 32-1* at 15.) In *Sybersound*, the plaintiff and defendant were competitors who both produced and sold karaoke records. *Id.* at 1141. The plaintiff alleged that the defendant's records infringed **the artists' copyrights** and that the defendant falsely represented to customers that it had licensed the karaoke songs from the artists, when in fact no licenses had been obtained. *Id.* at 1147. Given the cost savings that the defendant achieved by not licensing the songs, the plaintiff claimed it lost sales because the defendant could "undercut" its prices. *Id.* Following *Holmes* and *Anza*, the court held that—as a competitor—the plaintiff was merely an indirect victim, who lacked standing: "the more direct victims of the [defendants'] alleged infringement actions, ***the copyright holders***, can be expected to pursue their own claims." *Id.* at 1149 (emphasis added).

**Plaintiffs here are the copyright and trademark holders**. (*ECF 23* at ¶¶ 77, 88, 95, 104, 112, 119, 128, 134, 149, 157.) Accordingly, pursuant to *Sybersound*, Plaintiffs are not seeking to recover for harm visited upon a third-party but are the parties directly injured by the alleged acts of infringement and fraud and, thus, have standing to bring their civil RICO claims.

Pursuant to the three policy considerations enunciated in *Holmes*, Plaintiffs are clearly the direct victims of Shein's alleged infringement and fraud. First, as the owners of the copyrights and trademarks at issue, Plaintiffs are the direct victims of Shein's alleged infringement and are the most suitable parties to vindicate the law.

14                    OPPOSITION TO MOTION TO DISMISS

503 U.S. at 260-270; *Sybersound,* 517 F.3d. at 1149. Second, as the owners of the copyright and trademarks, Plaintiffs are the only parties who could possibly incur damages by reason of Shein's alleged infringement, and the court would not be forced to adopt complicated rules apportioning damages. *Id.* Finally, Plaintiffs allege that they were damaged when Shein sold products that were blatant knock-offs of Plaintiffs' designs. (*ECF 23* at ¶¶ 75-163, 179.) A copyright owner is entitled to recover their actual damages. *teamLab Inc. v. Museum of Dream Space, LLC*, 650 F. Supp.3d 934, 955 (C.D. Cal. 2023). Actual damages "may be based on a 'hypothetical-license theory,' which looks to 'the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work.'" *Id.* The fact of alleged damage is sufficient to withstand a dispositive motion, even if the amount of damages is uncertain. *Id.*; *see, supra* Note 1.

Regardless of all other considerations, *Holmes'* proximate cause analysis applies only to the "by reason of" requirement found in RICO's civil standing provision: 18 U.S.C. § 1964(c). Plaintiffs also seek relief under 18 U.S.C. § 1964(a). (*ECF 23* at ¶ 180.) Shein makes no corresponding argument that Plaintiffs are disqualified from relief under 18 U.S.C. § 1964(a). Shein's motion must be denied.

## D.   Plaintiffs allege Defendants' participation in the conduct of a RICO enterprise.

A single individual or entity cannot be both the RICO enterprise and the individual defendant. *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992). Nonetheless, a plaintiff "is free to name all members of the association-in-fact enterprise as individual defendants." *Id.* at 1462. Logically, a person is distinct from any group to which the person belongs. *Id.* at 1461. The enterprise alleged by Plaintiffs consists of the several Defendants (i.e., SDC, SFG, Roadget, and Zoetop). (*ECF 23* at ¶ 176.) Pursuant to *River City*, an enterprise made up of only these defendants would be actionable, but Plaintiffs' enterprise also

includes non-defendants, such as Guangzhou, Romwe, Nanjing, Style Link, BFI, and the Shein Law Firms. (*Id.*) Plaintiffs have clearly alleged an enterprise that is distinct from the RICO defendants. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (the defendant was sufficiently distinct from an LLC that was nothing more than the defendant's corporate alter ego). Accordingly, Plaintiffs allege that Defendants did more than simply conduct their own affairs.

In *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005) a similar enterprise was actionable. There, Dupont was accused of fraudulently concealing evidence in a prior lawsuit, and as a result, the plaintiff settled the prior lawsuit for a fraction of its value. The plaintiffs brought a RICO claim against Dupont after the concealed evidence was discovered. The Ninth Circuit held that an enterprise consisting of Dupont, its lawyers, and its experts was sufficiently distinct from Dupont:

> DuPont … retained law firms for the purpose of defending DuPont in Plaintiffs' lawsuits. These law firms are required to conform to ethical rules and thus are not merely at the beck and call of their clients…. Just as a corporate officer can be a person distinct from the corporate enterprise, DuPont is separate from its legal defense team…. Indeed, the rules of professional conduct require law firms to be distinct entities and to maintain their professional independence.

*Id.* at 362 (citations omitted). Like the enterprise in *Living Designs*, the enterprise alleged by Plaintiffs also includes Shein's outside counsel and is, thus, necessarily distinct from those entities within the Shein corporate family.

An association-in-fact enterprise must also be distinct from the pattern of racketeering activity. Plaintiffs allege that the members of the enterprise shared the common purpose of "advancing Shein's business of selling clothing and apparel and enabling Shein to misappropriate and profit from the intellectual property of others

OPPOSITION TO MOTION TO DISMISS

with impunity." [7] (*ECF 23* at ¶ 176(a).) Plaintiffs allege that the members are related "in that they are all members or agents of Shein." (*Id.* at ¶ 176(b).) Finally, the enterprise allegedly possessed sufficient longevity, having operated from 2016 to this day. (*Id.* at ¶ 176(c).) Accordingly, Plaintiffs have alleged an association-in-fact enterprise distinct from the pattern of racketeering. *See Boyle v. United States*, 556 U.S. 938, 946 (2009).

Finally, Plaintiffs have alleged that each defendant "participate[d] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). An enterprise is "operated" not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management. *Id.* Plaintiffs sufficiently allege how each Defendant participated in the operation or management of the enterprise. (*ECF 23* at ¶¶ 62, 176.) Whether a particular defendant operates or manages an enterprise is ordinarily a jury question. *Watts v. Allstate Indem. Co.*, 2009 WL 19055047, *6 (E.D. Cal. July 1, 2009).

> Unless a civil RICO defendant is indisputably directing the affairs of the enterprise, his commission of crimes that advance its objectives must be assessed by a fact-finder to determine whether or not his criminal activity, assessed in the context of all the relevant circumstances, constitutes participation in the operation or management of the enterprise's affairs.

*United States v. Allen*, 155 F.3d 35, 42 (2d Cir. 1998). Shein's motion to dismiss must be denied.

## V.   BARON HAS ADEQUATELY PLED A CLAIM FOR COPYRIGHT INFRINGEMENT OF AN ORIGINAL WORK

Shein argues that Baron's claim is fatally flawed because it "'combine[s]

---

[7] Plaintiffs do not allege that the enterprise was involved in "routine commercial relationships." *Neerman v. Cates*, 2022 WL 18278377, *6 (C.D. Cal. Dec. 28, 2022) (dismissing a bank that had a routine customer relationship with the scam artists who injured the plaintiff). Business partners can form an enterprise if their business relationship incorporates acts of racketeering. *See River City Markets, Inc.*, 960 F.2d at 1461 (stating that "nothing in our RICO case law instructs that two contracting business entities cannot form an 'enterprise'….").

several unprotectable ideas and standard elements[,]' he may not utilize copyright law to seize these elements for his exclusive use." (*ECF 32-1* at 20.) This strawman argument is without merit.

First, Shein conflates ownership of a valid copyright with ownership of a copyright registration. (*ECF 32-1* at 20-22.) True, an infringement action requires ownership of a copyright, but contrary to Shein's claim, ownership is not determined by registration. "[A] party may sue for infringement 'notwithstanding the refusal of the Register to register the claim to copyright' as long as 'notice [is] served on the Register.'" *UAB "Planner5D" v. Facebook, Inc.*, 534 F. Supp. 3d 1126, 1135 (N.D. Cal. 2021).[8] Thus, while Baron's initial application for registration of his work was rejected, he is nevertheless entitled to bring a claim for infringement.

Shein attempts to remedy the flaws in its ownership argument by inferring from the rejection of Baron's initial application that "the Copyright Office rejected his application for lack of creativity and/or noncompliance with copyright law." (*ECF 32-1* at 19.) The Copyright Office's reasoning, however, does not constitute grounds for dismissal because this Court may now "determine both the validity of the copyright, which in turn determines its registrability, as well as whether an infringement has occurred." *UAB "Planner5D," supra*, 534 F. Supp. 3d at 1135 (citing *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1181 (9th Cir. 1983)).

Second, contrary to Shein's argument, Baron's work is an original design. (*ECF 32-1*, 19:11, 12.) The Supreme Court has held:

> To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they

---

[8] Baron has actually obtained a registered copyright for his work (Copyright Registration No. VA 2-125-614) and can amend his claim to allege this registration.

OPPOSITION TO MOTION TO DISMISS

possess some creative spark, no matter how crude, humble or obvious it might be. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 3451 (1991).

Shein does not dispute that Baron independently created the "Trying My Best" artwork or that the artwork possesses a minimal degree of creativity. Rather, Shein separates out individual elements of the work—"merely a generic nametag with the phrase 'Trying My Best' included"—to conclude that he is trying to "seize these elements for his exclusive use," and obtain "a monopoly on the nametag design." (*ECF 32-1* at 19-20.) Shein's argument is disingenuous. Baron obviously does not claim ownership of the generic nametag design or ownership of the phrases "Hello I'm" and/or "Trying My Best." Baron claims ownership of the unique combination of all these elements, along with their unique visual arrangement (e.g. color scheme, size, font, embroidered patch). A well-established test considers whether similarities in the selection and arrangement of all elements—individually protectable or not—amount to substantial similarity of original expression. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1075 (9th Cir. 2020); *see, e.g., Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) (finding substantial similarity in a combination of unprotectable elements in a television screenplay, and remarking that "[e]ach note in a scale ... is not protectable, but a pattern of notes in a tune may earn copyright protection."); *Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004) ("[T]o disregard" elements as unprotected when performing the extrinsic test "is to ignore the fact that substantial similarity can be found in a combination of elements, even if those elements are individually unprotected"); *United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978) ("[O]riginality may be found in taking the commonplace and making it into a new combination or arrangement."). Shein made a verbatim copy of Baron's unique combination of the design elements.[9]

---

[9] Moreover, on a motion to dismiss, Shein cannot offer evidence outside of the
(footnote continued)

Finally, "the question of originality in copyright law is one of fact, not of law; one that may not be disposed of upon a motion to dismiss." *Optima Tax Relief LLC v. Channel Clarity, Inc.*, 2015 WL12765016, *3 (C.D. Cal. Aug. 26, 2015).

## VI.   THE SUPPOSEDLY IMPROPER ALLEGATIONS SHOULD NOT BE STRUCK

Shein asks that the Court strike eight allegations from the FAC. (*ECF 32-1* at 20-21.) "Motions to strike on the grounds of insufficiency, immateriality, irrelevancy, and redundancy are not favored ... and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Bianchi v. St. Farm Fire and Cas. Co.*, 120 F. Supp. 2d 837, 841 (N.D. Cal. 2000) "Without an adequate showing of prejudice, courts may **'deny motions to strike even though the offending matter literally [was] within one or more of the categories set forth in Rule12(f).'"** *Agricola Cuyuma SA v. Corona Seeds, Inc.*, 2019 WL 1878353, at *1 (C.D. Cal. Feb. 20, 2019) (emphasis added).

Shein seeks to strike the allegations because they "appear to be included solely to tarnish Defendants and cast them in an unfavorable and prejudicial light." (*ECF 32-1* at 29.) But this so-called "scandalous" material largely comes from government reports and high-level mainstream media and documentaries, not idle gossip. (*ECF 23* at 1 n.1.) With these allegations, Plaintiffs make the substantive and important point that Shein cares little about the bad press it regularly receives. Such allegations go to Shein's intent and motivation, i.e., to make money— regardless of who they cheat, exploit, or infringe. If these statements tarnish Shein, Shein was tarnished long before Plaintiffs' complaint was filed by unrelated people who have a far louder voice.

In addition, a motion to strike under Rule 12(f) is not "an appropriate avenue

---

pleading. (*ECF 32-1* at 19 n.9); see *Los Angeles Waterkeeper*, 2023 WL 7960773 at *5.

to challenge the truth of an allegation." *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "If there is any doubt whether the allegations to be stricken might bear on an issue in the litigation, the court should deny the motion." *In re 2TheMart.com Secs. Litig.*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000)."

## VII.   CONCLUSION

For all the foregoing reasons, Shein's motion to dismiss should be denied. In the alternative, Plaintiffs should be granted leave to file an amended complaint.


DATED: December 22, 2023          ERIKSON LAW GROUP

By:   ___/s/_____

David A. Erikson
Attorneys for Plaintiffs

**L.R. 11-6.1 CERTIFICATION**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,908 words, which complies with the word limit of L.R. 11-6.1.


DATED: December 22, 2023                    ERIKSON LAW GROUP

                                            By:    ___/s/_____

                                                   David A. Erikson
                                            Attorneys for Plaintiffs